THE STATE, EX REL. MARTIN, PROS. ATTY., *v.* THE
OHIO ELECTRIC POWER CO.

(Decided May 21, 1928.)

Mr. *Edgar G. Martin,* prosecuting attorney, Mr. *G. Ray Craig* and Mr. *Charles Suhr,* for plaintiff.
Messrs. *Fauver & Fauver* and Mr. *W. R. Pruner,* for defendant.

LLOYD, J.  This is an action in *quo warranto,* whereby the plaintiff, the state of Ohio, on relation of Edgar G. Martin, prosecuting attorney of Huron county, seeks to oust the defendant, The Ohio Electric Power Company, from using the public streets, lanes, alleys, avenues, and other public places of the city of Norwalk for the erection and maintenance of poles, wires, guy wires, and electrical equipment for the distribution of electricity for heat, light, and power purposes in said municipality.

The defendant is a corporation, incorporated in August, 1924, under the laws of Ohio, for the purpose, among others, of engaging in the business of operating power plants with the necessary appliances, equipment, etc., for furnishing and distributing electricity for private and public consumption, and since 1922 has been furnishing electricity to such of the people of Norwalk as choose to become its customers.

In 1890 six men, of whom there is now but one resident survivor, formed a partnership under the name of the Norwalk Incandescent Light Company to furnish electricity in the city of Norwalk for commercial purposes.  Thereafter, upon application of the partnership therefor, the city of Norwalk, by ordinance passed October 7, 1890, granted to it, its successors and assigns for the term of twenty

years, "a right of way through, in and upon the streets, sidewalks and alleys and grounds of said city for the use and purpose of therein and thereon erecting and maintaining and using all necessary poles or posts of wood, iron or other suitable material, and the necessary wires to successfully operate and use a system of incandescent lighting in said city."

That ordinance contains certain restrictive conditions as to the height and location of the poles, and provides that "this grant of way is not exclusive." It contained no provision or condition as to how or in what manner the grantee should indicate its acceptance thereof, but the necessary equipment was installed by the partnership, and it thereafter conducted its business of furnishing and distributing electricity in Norwalk until the incorporation in March, 1891, of The Incandescent Light & Power Company of Norwalk, Ohio, for the purpose of "furnishing to the citizens of Norwalk and vicinity electric lighting of both arc and incandescent, * * * electric * * * power and * * * electricity for heating, for profit." In our judgment this was in law an acceptance thereof, and a formal written acceptance under these circumstances was unnecessary.

The Incandescent Light & Power Company of Norwalk, Ohio, was incorporated by the members of the partnership and one or two others, and upon its incorporation the partnership transferred to it all of the partnership property, and it proceeded to use the plant and equipment of the partnership to furnish electricity for lighting and commercial purposes in Norwalk. It continued so to do until February, 1893, when it filed in the probate court of

Huron county a general deed of assignment for the benefit of creditors. By this deed it conveyed and assigned to the assignees named therein "all of its property of every nature and kind whatsoever." By a deed of the assignees, pursuant to an order of sale issued by the court of common pleas, to which an appeal had been taken from the probate court, all of the property, including "all franchises, patronage and good will and rights of said business" of The Incandescent Light & Power Company, was conveyed and transferred on March 7, 1895, to George F. Jones and Mayme C. Foster, their heirs and assigns, who by deed dated May 20, 1895, by similar description, conveyed the property so acquired by them to The Northern Electric Company, "its successors, heirs and assigns." Thereafter, on May 8, 1900, the grantee corporation conveyed this property by like description to The Norwalk Gas & Electric Company, its successors and assigns. On July 16, 1895, the city of Norwalk entered into a contract with The Northern Electric Company for lighting the streets, alleys, etc., of the city for a period of ten years from September 1, 1895, which contract, by consent of the city, was assigned to The Northern Gas & Electric Company, and by the latter company, with consent of the city, assigned to The Cleveland Southwestern Traction Company; and on April 13, 1905, a second contract for street lighting for a period of ten years from September 1, 1905, was entered into by the city with The Cleveland Southwestern Traction Company.

The Norwalk Gas & Electric Company owned and operated the property and business until February 14, 1903, when it conveyed and transferred all of its

property, franchise rights, and privileges to The Cleveland Southwestern Traction Company, its successors and assigns, by which company the property so described was conveyed and transferred to The Cleveland, Southwestern & Columbus Railway Company, which in turn, on March 1, 1924, conveyed and transferred it to The Cleveland Southwestern Railway & Light Company. On December 31, 1924, the last above-named company, with the consent of the Public Utilities Commission of Ohio, transferred by bill of sale to one Victor Emanuel, by specific description, certain tangible personal property in Norwalk and "all distributing power and light systems, transformers, meters, services and the equipment and appurtenances thereto or in connection therewith of the grantor within the corporate limits of the city of Norwalk, Ohio, including approximately 8.3 miles of lines and poles of the grantor, approximately 5.2 miles of lines on poles of others than the grantor, and approximately 4.3 miles of lines on poles owned jointly by the grantor and others, together with all right, title and interest of the grantor in and to the poles so occupied jointly."

On May 22, 1925, Victor Emanuel executed to the defendant, The Ohio Electric Power Company, a bill of sale for the above property in the identical language and form of the conveyance to him from The Cleveland Southwestern Railway & Light Company. Also on December 31, 1924, The Cleveland Southwestern Railway & Light Company conveyed to said Emanuel "all such right and title as it has or ought to have in the following described premises,"—describing certain rights of way and other personal property—and "all right, title and interest of the

grantor in and to any rights of way for a pole line, pole line rights, pole lines, poles and any licenses, franchises, easements or grants for said purposes possessed or enjoyed by the grantor in the City of Norwalk, Ohio, and/or used in connection with the distribution of power, light and heat by the grantor in said city.''

On May 22, 1925, Victor Emanuel, in consideration of $10 and other good and valuable considerations, sold, assigned, and quit-claimed to The Ohio Electric Power Company, its successors and assigns, certain specifically described property, and all contracts, franchises, grants, rights and privileges in the city of Norwalk acquired from The Cleveland Southwestern Railway & Light Company.

The relator contends that the defendant has no right to occupy the streets, alleys, and public places in the city of Norwalk with its poles, wires, etc., for the distribution of electricity therein, for the reason that the franchise granted by the municipality to the partnership, the Norwalk Incandescent Light Company, expired by limitation on October 7, 1910, and, the city not having thereafter consented to such use and occupation of its streets and other public places, the rights and privileges, so granted, thereupon ceased. The defendant claims, first, that by legislative enactment passed January 26, 1887, and operative until April 21, 1896, when it was materially changed by amendment, its predecessors in the right to occupy the streets and public ways and places of Norwalk obtained such privilege and authority directly from the state, and that, as the successor to them, by conveyance and assignment, it now possesses the rights and privileges so acquired;

and, second, that the city of Norwalk, having permitted defendant and its predecessors in title to continue to so occupy its streets and public places and furnish commercial and private lighting in the municipality, is now estopped to deny the right of respondent to so conduct its business in Norwalk and to occupy the streets and public places thereof for such purposes.

Chapter 2, Subdivision 2, Division 2, Title IX of Part II of the General Code, relates to telegraph and telephone companies, and Section 9170 thereof, formerly Section 3454, Revised Statutes, provides that "A magnetic telegraph company may construct telegraph lines, from point to point, along and upon any public road by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires; but shall not incommode the public in the use thereof."

Section 3471, Revised Statutes, now Section 9191, General Code, made the provisions of this chapter applicable also to telephone companies.

Section 3471a, Revised Statutes, now Sections 9192, 9193 and 9194, General Code, as originally enacted January 26, 1887, 84 Ohio Laws, 7, provided: "The provisions of this chapter, so far as the same may be applicable, shall apply also to any company organized for the purpose of supplying the public and private buildings, manufacturing establishments, streets, alleys, lanes, lands, squares, and public places with electric light and power, and every such company shall have the same powers and be subject to the same restrictions as are herein prescribed for magnetic telegraph companies."

This statute continued in force until April 21,

1896, when it was amended, 92 Ohio Laws, 204, and as amended provided that "every such company shall have the same powers, except those given by said section three thousand four hundred and sixty-one, and be subject to the same restrictions, as are herein prescribed for magnetic telegraph companies," and that, "in order to subject the same to municipal control alone, no person or company shall place, string, construct or maintain any line, wire fixture or appliance of any kind for conducting electricity for lighting, heating or power purposes through any street, alley, lane, square, place or land of any city, village or town, without the consent of such municipality."

Section 3461, Revised Statutes, now Sections 9178 and 9179, General Code, relates to appropriation proceedings by telegraph companies, and by enactment of Section 3471a, Revised Statutes (Section 9192, General Code), became applicable to electric light and power companies. This section (Section 3461, Revised Statutes) provides in substance that the "mode of use" by any such company of the streets, alleys, etc., of any city or village, shall be such as shall be agreed upon by the municipal authorities thereof and the company, and, if they are unable to agree, the probate court in proceedings brought therein shall direct in what mode such line shall be constructed along such streets, alleys, etc. It is apparent, therefore, that on October 7, 1890, when the ordinance was passed by the city of Norwalk granting to the partnership, the Norwalk Incandescent Light Company, its successors and assigns, the right to occupy the streets and public places of the city for the purposes therein stated,

and thereafter, until April 21, 1896, when Section 3471a was amended (92 Ohio Laws, 204), neither a partnership nor any other person or company engaged in a like business was privileged to occupy the streets, alleys, etc., of any municipality in Ohio without either an agreement with the municipality or an order of the probate court directing the mode of such occupancy. It seems to us that neither a partnership nor an individual was contemplated by or designated in these statutory provisions. Their context seems clearly to indicate that the privileges thereby granted by the state applied only to incorporated companies. If this conclusion is correct, then not only the right to use, but the mode of use, could have been acquired by the partnership not otherwise than with the consent of the municipality expressed in an ordinance conferring those privileges. This the city of Norwalk did by the ordinance of October 7, 1890, limiting therein the right to use and the mode of use to twenty years from that date. The partnership, therefore, and its successive assignees, acquired the right to occupy the streets, alleys, etc., of Norwalk from the city and not from the state. Surely an electric light and power company upon which the state has conferred certain rights, conditional upon compliance with the legislative enactments creating them, may not as an assignee of a partnership or an individual acquire the rights so granted in derogation of the authority conferring them.

Any of the corporate assignees of the partnership could at any time have sought to agree with the municipal authorities as to the mode of use of the streets, alleys, etc., of the city in the exercise of their

corporate functions and authority; and, if agreement between them was not possible, might have instituted proceedings in the probate court of Huron county to effect this purpose. The Northern Electric Company which last occupied the streets, etc., of Norwalk, prior to April 21, 1896, when Section 3471a, Revised Statutes, was amended, might have so proceeded at the expiration of the time fixed in the ordinance. Not having done so, and having relied solely upon the ordinance, with its restrictive terms and conditions, until the time within which the proceedings authorized by Section 3461, Revised Statutes, might have been invoked had elapsed, we are of the opinion that the respondent cannot now claim to be possessed of any greater rights than the ordinance gave. If the partnership were held to be such a company as was included within the purview of Sections 3454 and 3471a, Revised Statutes, then its right to occupy the streets of Norwalk was conditioned upon its agreeing with the municipal authorities as to the mode of use; or, failing so to agree, upon the direction of the probate court of the county as to the mode of use, in a proceeding instituted for that purpose; and such agreement or direction is inseparable from such right, and such right terminates with such agreement or direction. *State, ex rel.,* v. *Central Union Telephone Co.,* 11 C. C., 55, 5 C. D., 311.

The views we have here expressed and the conclusion at which we have arrived are not in conflict with the decision of the United States Supreme Court in *Ohio Public Service Co.* v. *Ohio, ex rel. Fritz,* 274 U. S., 12, 47 S. Ct., 480, 71 L. Ed., 898, for the rea-

son that the franchise there involved was for an unlimited time. Being of the opinion also that the doctrine of estoppel has no application to the facts here presented, we conclude that the prayer of the relator should be granted.

*Judgment accordingly.*

RICHARDS and WILLIAMS, JJ., concur.