## CHASE NATIONAL BANK *v.* CITY OF NORWALK.

No. 290. Argued January 18, 19, 1934.—Decided March 5, 1934.

*Mr. George D. Welles,* with whom *Messrs. Earl F. Boxell, Arthur A. Gammell,* and *Timothy N. Pfeiffer* were on the brief, for petitioner.

*Messrs. G. Ray Craig* and *H. C. Laughlin,* with whom *Messrs. Rex F. Bracy, E. G. Martin,* and *W. A. Eversman* were on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This case is here on certiorari to the United States Circuit Court of Appeals for the Sixth Circuit. Whether the injunction granted in this cause by the federal court for northern Ohio stays a judgment of ouster rendered by the Court of Appeals of the State in violation of Judicial Code § 265 is the main question requiring decision.[1]

In May, 1925, The Ohio Electric Power Company acquired the electric light and heating system then serv-

---

[1] Sec. 265. "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

ing a part of the residents of the City of Norwalk, Ohio; and by a duly recorded mortgage deed of trust, transferred the property to a trustee to secure an issue of bonds. In March, 1926, the City Council passed a resolution in terms requiring the Power Company to remove from the streets, alleys and other public places within 30 days, its poles, wires and other electric equipment. These had been erected and were being maintained pursuant to an ordinance of the City, dated October 7, 1890. The City claimed that the Power Company had no right so to occupy the streets, alleys and public places, because the franchise granted by the ordinance was for a limited term and that term had expired without extension or renewal. The Power Company refused to comply with the City's demand, claiming that it had, under legislation of the State, acquired a perpetual franchise.

In May, 1926, the State brought, in the Court of Appeals of Ohio, at the relation of the prosecuting attorney for Huron County, an action in *quo warranto* against the Power Company to oust it from such use of the streets, alleys and public places. That court, holding that the franchise granted had expired, entered a judgment of ouster, *State ex rel. Martin* v. *Ohio Electric Power Co.*, 35 Ohio App. 481; 172 N.E. 615; and the judgment was affirmed by the Supreme Court of the State. *Ohio Electric Power Co.* v. *State ex rel. Martin*, 121 Ohio St. 235; 167 N.E. 877. The action had been instituted at the request, and had been prosecuted with the aid, of the City; but it was not a party thereto. The mortgage given by the Power Company and the bonds thereby secured were then (and still are) outstanding. But the State did not make the trustee a party respondent; and the trustee did not intervene, or seek to intervene, in the action. Neither the State nor the Power Company made mention of the existence of the mortgage either in its plead-

434

ings or otherwise. Whether the State, the relator, or the City knew of the mortgage, and whether the trustee knew of the action in *quo warranto*, does not appear.

Before any step had been taken by the State to enforce the judgment of ouster, the then trustee under the mortgage deed of trust, a citizen and resident of New York, brought this suit in the federal district court for northern Ohio. The Chase National Bank, likewise a citizen and resident of New York, has since been substituted as trustee and plaintiff. The City of Norwalk alone was made defendant. The bill set forth in addition to the facts stated above, that the plaintiff as such trustee is entitled to the continued use of the poles, wires and electrical equipment by the Power Company; that the judgment of ouster has not yet been executed; that the Power Company is still serving the Norwalk public; that the City is threatening to destroy, or forcibly remove, the poles, wires and equipment from the streets, alleys, and public places and to prevent the operation of the system or to seek to have enforced the judgment of ouster; and that such acts would result in irreparable injury to the plaintiff.

The District Court held that the plaintiff has as mortgagee a good and valid lien upon the poles, wires and electrical equipment, and the rights and franchises to use the streets, alleys and public places therefor; that " for the purpose of protecting, preserving and enforcing the lien of the mortgage " the Power Company " is and was at the time of the filing of the bill of complaint herein the owner "; that these rights were granted " in perpetuity as against any right or power of the City of Norwalk with reference thereto . . ."; and that the " franchises, rights and physical properties will be destroyed and rendered worthless " unless a permanent injunction issues. The decree enjoined the City, its officers, agents and employees, " and all persons whomsoever to whom notice of this order shall come," from destroying, or interfering with the con-

tinued operation by the Power Company of, the plant and distribution system; "from taking any steps or action of any kind whatever to cause the enforcement or carrying out by the Sheriff of Huron County, Ohio, . . . of the judgment of ouster"; and "from applying to any of the courts of the State of Ohio for any writ, process or order of any kind whatever for the purpose of enforcing and carrying out said judgment of ouster." The injunction was granted to continue only as long as the plaintiff or its successor, or holders of bonds under the mortgage, should have any interest in or lien upon the properties and franchises of the Power Company in the City of Norwalk.

The Circuit Court of Appeals did not pass upon the question whether the plaintiff has, as mortgagee, an interest in or lien upon the alleged property and rights; nor upon the question whether the Power Company retains for the protection of the mortgagee, an existing right to use the streets, alleys and public places as claimed; nor specifically upon the question whether the franchises granted had expired. It held, one judge dissenting, that, although the District Court had jurisdiction of the parties and of the subject matter, that court was not justified in granting an injunction; and it reversed the decree with directions to dismiss the bill, 63 F. (2d) 911, for the following reasons:

(a) That the proceedings in the District Court came within the inhibitions of Judicial Code, § 265, in that the effect of the decree was to stay the *quo warranto* proceeding in the state courts.

(b) That the case does not fall within the exceptions which permit a federal court to interfere with the judgment of a state court, because there was no showing that the judgment in the action in *quo warranto* was void for lack of jurisdiction, or was based upon fraud or upon such accident or mistake as made its enforcement unconscionable.

(c) That because the plaintiff has not shown that it lacked knowledge of the action in *quo warranto,* or that it could not have intervened therein as mortgagee, and have asserted therein the claim which it presents now as the basis of the relief sought, it has failed to make the necessary showing of diligence.

There was error in the decree entered by the District Court; but the Circuit Court of Appeals was not justified in ordering that the bill be dismissed.

*First.* Independently of the prohibition of Judicial Code, § 265, the decree entered by the District Court was clearly erroneous in so far as it enjoined " all persons to whom notice of the order of injunction should come from taking any steps or action of any kind to cause the enforcement of the ouster in the state court." The City alone was named as defendant. No person other than the City was served with process. None came otherwise before the court. The prayer of the bill sought relief solely against the City and " its officers, officials, agents, employees and representatives." [2] It is true that persons not technically agents or employees may be specifically enjoined from knowingly aiding a defendant in performing a prohibited act if their relation is that of associate or confederate. Since such persons are legally identified with the defendant and privy to his contempt, the provi-

---

[2] The prayer is that " the City of Norwalk, and the officers, officials, agents, employees and representatives of said defendant " be enjoined " from in any manner interfering with or interrupting the continued operation of the plant and electrical distribution system of the Ohio Electric Power Company, in the streets, alleys and other public places of the City of Norwalk and from taking any steps or doing any act to dismantle, wreck or remove any part of said system . . ." and " from taking any steps or action of any kind whatever to cause the enforcement or carrying out by the Sheriff of Huron County, Ohio, or any of his deputies, or by any other officer of any of the courts in the State of Ohio, of the judgment of ouster. . . ." (The latter prohibition to apply also to the attorneys of the City.)

sion merely makes explicit as to them that which the law already implies. See *In re Lennon,* 166 U.S. 548. But by extending the injunction to "all persons to whom notice of the injunction should come," the District Court assumed to make punishable as a contempt the conduct of persons who act independently and whose rights have not been adjudged according to law.[3] See *Alemite Mfg. Co.* v. *Staff,* 42 F. (2d) 832. Under the clause inserted in the decree, officials of the State of Ohio might be proceeded against for contempt, if they should apply to the state court to enforce its judgment, although acting solely in the performance of their official duty. To subject them to such peril violates established principles of equity jurisdiction and procedure. *Scott* v. *Donald,* 165 U.S. 107, 117; *Hitchman Coal & Coke Co.* v. *Mitchell,* 245 U.S. 229, 234.[4] Those principles require that the clause be limited to confederates or associates of the defendant.

*Second.* On the other hand, the decree of the Circuit Court of Appeals was clearly erroneous in so far as it refused to enjoin the "city and its agents from forcibly removing the wires and poles without state warrant." The trustee claimed that it had a valid mortgage lien upon the poles, wires and electrical equipment, and upon the right and franchise in perpetuity to use them on the streets, alleys and public places; and the bill alleged that removal by the City of the poles and wires would result in irreparable injury to the trustee. Neither the trustee nor the City had been a party, or privy, to the litigation in the state courts. These courts did not purport to pass

---

[3] *Harvey* v. *Bettis,* 35 F. (2d) 349; *Donaldson* v. *Roksament Stone Co.,* 178 Fed. 103; *Bliss* v. *Atlantic Handle Co.,* 212 Fed. 190; *Omeliah* v. *American Cap Front Co.,* 195 Fed. 539, 540. Compare *Tosh* v. *West Kentucky Coal Co.,* 252 Fed. 44, 48.

[4] Compare *United States Playing Card Co.* v. *Spalding,* 92 Fed. 368, 369.

upon the validity of the trustee's claim; and in no state court was that claim in litigation. However broad the scope of the prohibition prescribed by Judicial Code, § 265, it could not preclude the federal court from protecting the trustee's alleged property from wanton destruction by one not a party or privy to the judgment of ouster.

The contention is that in essence this "is a suit by a mortgagee to obtain a readjudication of the law and facts adjudicated by a state court of competent jurisdiction in a proceeding to which the mortgagor was a party"; and that, since the controlling question is one of the construction and application of statutes of Ohio, a federal court would, in any event, follow the decision of the highest court of the State. It is true that, in the absence of special circumstances, federal courts consider themselves bound by the construction theretofore given by the highest court of a State to its statutes. But, under well settled principles of jurisdiction, governing all courts, a decree against a mortgagor with respect to property does not bind a mortgagee whose interest was acquired before the commencement of the suit, unless he was made a party to the proceedings. *Old Colony Trust Co.* v. *Omaha,* 230 U.S. 100, 122.[5] For in every case where a mortgage was given before the litigation against the mortgagor was instituted, the mortgagee is entitled to have a decision determining his rights rendered on the basis of the facts and considerations adduced by him. Obviously, the facts and considerations affecting the trustee's rights may be differ-

---

[5] *Louisville Trust Co.* v. *Cincinnati,* 76 Fed. 296; *Old Colony Trust Co.* v. *Tacoma,* 219 Fed. 775, 776; *Illinois Trust & Savings Bank* v. *Des Moines,* 224 Fed. 620, 624; *Williamson* v. *Clay Center,* 237 Fed. 329, 335. Compare *Dull* v. *Blackman,* 169 U.S. 243; *Bigelow* v. *Old Dominion Copper Co.,* 225 U.S. 111; *Postal Telegraph Co.* v. *Newport,* 247 U.S. 464, 476; *Doctor Jackpot Mining Co.* v. *Marsh,* 216 Fed. 261.

ent from those presented to the state court on behalf of the Power Company. Because there is diversity of citizenship, the trustee under the mortgage is entitled to have the adjudication of his alleged rights made in the federal court. Compare *Atchison, T. & S. F. Ry. Co. v. Wells,* 265 U.S. 101. As a decree enjoining the City " from removing the wires and poles without state warrant " would not interfere with the proceedings in the state court, that part of the injunction was not within the prohibition of Judicial Code, § 265. *Louisville Trust Co. v. Cincinnati,* 76 Fed. 296, 300, 317.

*Third.* The contention that the decree violates Judicial Code § 265, is rested mainly upon the clause which enjoins the City, its officers and attorneys " from taking any steps or action of any kind whatever to cause the enforcement or carrying out by the sheriff of Huron County, Ohio, or any of his deputies, or by any other officer of any of the courts in the State of Ohio of the judgment of ouster " and " from applying to any of the courts of the State of Ohio for any writ or process of any kind whatever for the purpose of enforcing and carrying out said judgment of ouster."

To enjoin the City from taking steps to enforce the judgment of ouster obviously does not stay that judgment. The City was not, and could not have been a party to the action in *quo warranto.*[6] The City's argu-

---

[6] The City states that it was not, and could not have been made, a party to the *quo warranto* proceedings; that the fact that *quo warranto* proceedings are brought by the State in its sovereign capacity is not a mere matter of form, but is of the essence of the proceeding; and that it is public not personal in nature, regardless of the person who furnishes the information upon which the action is based. In support of this proposition the City cited *State v. Maccabees,* 109 Ohio State 454; 142 N.E. 888; *State v. Conservancy District,* 100 Ohio State 483; 128 N.E. 87; *Hardin-Wyandot Co. v. Upper Sandusky,* 93 Ohio State 428; 113 N.E. 402; *Thompson v. Watson,* 48 Ohio State 552; 31 N.E. 742; *State v. Craig,* 21 Ohio C.C. 175.

ment is that the decree can have no effect unless it acts directly upon the Court of Appeals of Huron County itself, and upon the State of Ohio, which was the moving party in the *quo warranto* proceeding, and that hence, this action is an attempt to do so; that "the incidental effect of the decree upon the possible unauthorized action of the city officials is too negligible to be given consideration in determining its character"; and that the real purpose for which the decree was sought is to stay the proceeding in the state court. It may be assumed that in seeking an injunction from the federal court, the trustee's purpose—its hope—was to induce the officials of the State of Ohio to refrain from enforcing the judgment of ouster until adjudication of the trustee's rights should have been had in the federal court. That purpose or hope is not of legal significance in this connection. Full control of the ouster proceeding rests with the law officers of the State, subject to the control of the state court. See *Thompson* v. *Watson,* 48 Ohio State 552; 31 N.E. 742. The injunction, when limited as we hold it must be, is directed only to the City, its attorneys, agents and confederates. It prohibits them from attempting to induce the State to enforce the judgment of ouster. So limited, the decree will leave the State and the relator free to act; and the injunction will not stay the operation of the judgment.

*Fourth.* The contention is also made that the Circuit Court of Appeals properly ordered the bill dismissed because the trustee failed to allege, or prove, that it did not have knowledge of the proceeding in the state court or that it could not have intervened therein, as mortgagee, and asserted there the claims that it now makes as the basis of the relief sought. Where equitable relief is sought on the ground that a judgment entered upon proper service in a court of competent jurisdiction was obtained

through fraud or mistake, or is being used fraudulently, such a showing of diligence is ordinarily required. *Crim v. Handley*, 94 U.S. 652; *Brown* v. *Buena Vista*, 95 U.S. 157; *Knox County* v. *Harshman*, 133 U.S. 152; *Marshall* v. *Holmes*, 141 U.S. 589.[7] Compare *Wells, Fargo & Co.* v. *Taylor*, 254 U.S. 175. But here the injunction is sought on the ground that the judgment is inoperative as against the plaintiff because it was neither party nor privy thereto Compare *Atchison, T. & S. F. Ry. Co.* v. *Wells*, 265 U.S. 101; *Simon* v. *Southern Ry. Co.*, 236 U.S. 115; *Old Colony Trust Co.* v. *Omaha*, 230 U.S. 100.[8] The law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger. Whether under the Ohio practice it would have been possible for the trustee to intervene, we have no occasion to determine.[9] Unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights.

The decree of the Circuit Court of Appeals is reversed. As it did not pass upon the merits of the trustee's claim, the cause is remanded to that court for further proceeding in conformity to this opinion.

*Reversed.*

---

[7] *Louisville Trust Co.* v. *Cincinnati*, 76 Fed. 296; *Old Colony Trust Co.* v. *Tacoma*, 219 Fed. 775; *Illinois Trust Co.* v. *Des Moines*, 224 Fed. 620; *Williamson* v. *Clay Center*, 237 Fed. 329; *Firestone Tire & Rubber Co.* v. *Marlboro Cotton Mills*, 282 Fed. 811; *Seay* v. *Hawkins*, 17 F. (2d) 710; but compare *Denton* v. *Baker*, 93 Fed. 46.

[8] Also compare *National Surety Co.* v. *State Bank*, 120 Fed. 593.

[9] In *Northern Ohio Traction & Light Co.* v. *Ohio*, 245 U.S. 574, a proceeding in *quo warranto*, in which the Traction Company alone was named as defendant, it appears from the record in this court, that the Cleveland Trust Company, trustee under a mortgage, moved in the Supreme Court of Ohio for leave to be made a party and to file an answer; that consent thereto was given; that thereafter motion was allowed; and that the answer was filed and replied to.