Rockingham
No. 7615 & No. 7829

## The State of New Hampshire

### v.

### Robert D. Gross

October 31, 1977

*David H. Souter,* attorney general, and *Richard B. McNamara,* attorney (*Mr. McNamara* orally), for the state.

*Devine, Millimet, Stahl & Branch,* of Manchester, and *McSwiney, Jones & Semple,* of Concord (*Mr. Shane Devine* orally), for the defendant.

LAMPRON, J. The defendant was found guilty of criminal contempt for violating an injunction issued by the Rockingham County Superior Court on August 20, 1976. During the course of trial, defendant excepted to the denial of his motion for a directed verdict of acquittal at the close of the state's evidence and excepted to the finding of guilty and the imposition of sentence. After filing a reserved case, defendant filed a motion for new trial based on newly discovered evidence. A hearing was held under an agreement that the trial court would hear the evidence that would have been presented at a new trial and the motion was therefore waived. After the hearing, the Trial Court (*Bois,* J.) reaffirmed its finding of guilt. Defendant excepted to this ruling. All questions of law raised by the defendant's exceptions were reserved and transferred.

Properties, Inc., and Public Service Company of New Hampshire own a tract of land in Seabrook upon which a nuclear power plant is being constructed. These two owners of the property, joined by various labor unions which had members working on the construction of the nuclear power plant, petitioned the superior court for an injunction alleging that twenty-one named individuals "and other persons and groups of persons whose names are unknown, a/k/a Clamshell Alliance, John Doe and Jane Doe" intended to occupy the Seabrook construction site in order to protest the construction of the power plant. The defendant's name was not included as a party defendant in the petition. On August 20, 1976, the superior court issued a temporary injunction enjoining the "named defendants, and all members of the groups named in the petition" from entering or occupying the site without the express permission of the plaintiffs; obstructing the entrance or exit of the site; destroying or damaging any property on the site; or committing any other act that would obstruct the activities of the Public Service Company on the site.

The demonstration which the injunction sought to prevent occurred on August 22, 1976. The defendant was present at the demonstration acting as a legal observer at the request of the New Hampshire Civil Liberties Union. Various individuals, including the defendant, testified at the trial that a legal observer's function is to act as a neutral witness to insure that civil rights are ob-

served, violence does not occur, and unfounded allegations against law enforcement officials are not made. Three of them were attorneys, all of the other fifteen were either law students, paralegals, or otherwise trained in law. The defendant entered the site to discuss various matters with law enforcement officials, and was on the premises when the demonstrators entered the construction site and were arrested. The record indicates that at some point between the time the demonstrators entered the premises and when the arrests commenced, the defendant and two other observers received permission to remain on the premises by a representative of Public Service Company. The record is in conflict on whether the defendant had permission to originally enter the premises. This issue, however, was resolved against the defendant by the trial court's finding of guilty. The defendant was not arrested at the site, as were the demonstrators. He was arrested three days later by the sheriff's department at his law office in Manchester.

Criminal contempt proceedings in this state are based on an affidavit reciting the contemptuous acts alleged to have been committed by the defendant, followed by the issuance of a warrant of attachment of his person to answer before the court to the charges made. *See* Douglas, *Civil and Criminal Contempt in New Hampshire*, 17 N.H.B.J. 13, 24–25 (1975). The affidavit in this case set forth the elements of the charges against the defendant. They are the following: (1) an injunction existed prohibiting certain named individuals and organizations "from entering upon or occupying without express permission of the owners thereof a certain tract of land located in Seabrook"; (2) by its terms this order temporarily enjoined one Robert D. Gross "from going upon or occupying the land described in said order"; (3) Robert D. Gross "was duly notified of the temporary injunction"; (4) Robert D. Gross "without authority did intentionally, and with knowledge of the Court's injunction, go upon the . . . site . . . and did thereby engage in conduct which was in violation of the said injunction and constituted a contempt of the court."

■■ By the terms of its injunction, the superior court attempted to enjoin the whole world from entering the specified premises. A court of equity does not have such power. *Chase National Bank v. City of Norwalk*, 291 U.S. 431, 437 (1934). Judge Learned Hand expressed this principle in *Alemite Manufacturing Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930), when he wrote "no court can make a decree which will bind any one but a party; a court

of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree." This is so because an order that no one shall trespass is in substance a statute against trespass, but the punishment may be greater for violation of the judicial decree. Dobbs, *Contempt of Court,* 56 Cornell L.R. 183, 250 (1971). The defendant could not, therefore, be prosecuted for being a "John Doe" or other "unknown person" who entered the premises in violation of the injunction.

■ This does not mean that a person has to be specifically named in the injunction in order to be found in contempt. He could be a member of a named class which is enjoined, or be found to have aided and abetted those named in the injunction. *Regal Knitwear Co. v. N.L.R.B.,* 324 U.S. 9 (1945); *Alemite Manufacturing Corp. v. Staff,* 42 F.2d 832 (2d Cir. 1930); *see* Annot., 15 A.L.R. 386, 393. The principle that an individual has to be named in the injunction or, as applicable in this case, a member of a named class or an aider and abettor, is reflected in rule 65(d) of the Federal Rules of Civil Procedure. This rule has been acknowledged as being derived from the common law. *Regal Knitwear Co. v. N.L.R.B.,* 324 U.S. at 14.

■ It follows, therefore, that defendant could have been found guilty of criminal contempt, even though he was not named in the injunction, if the prosecution had proved beyond a reasonable doubt that he was a member of the Clamshell Alliance or of any other group named therein. *Matter of Johnson,* 467 Pa. 552, 359 A.2d 739, 742 (1976); *In re Winship,* 397 U.S. 358 (1970); 17 Am. Jur. 2d *Contempt* §§ 78, 98 (1964). The allegations made by the plaintiffs in their petition for the injunction, and the wording of the decree sought and issued, clearly show that it was directed against persons intent on obstructing the erection of plaintiffs' nuclear plant. We hold that the record would not support such a finding beyond a reasonable doubt. *Duval v. Duval,* 114 N.H. 422, 425, 322 A.2d 1, 3 (1974).

■ The only other basis for finding defendant in contempt is proof beyond a reasonable doubt that Gross aided and abetted the enjoined parties named in the injunction. The defendant was not so charged in the affidavit on which the warrant of attachment for contempt was issued. This is an essential element of this criminal proceeding. *State v. Matthews,* 37 N.H. 450, 454 (1859); *Com-*

*monwealth v. Mayberry,* 459 Pa. 91, 327 A.2d 86, 93–94 (1974). We hold that the record would not support a finding by proof beyond a reasonable doubt that Gross was guilty of aiding and abetting the demonstrators. There being no support in the evidence for a finding that defendant acted with a contumacious intent, we must reverse and set aside the defendant's conviction.

*Exceptions sustained.*

BOIS, J., did not sit; the others concurred.