908 F.2d 972
 61 Ed. Law Rep. 903
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael Ray CROCKER, Plaintiff-Appellee,
v.
TENNESSEE SECONDARY SCHOOL ATHLETIC ASSOCIATION and Ronald
Lee Carter, Individually and as Executive Director
of Tennessee Secondary School Athletic
Association, Defendants-Appellants,
and
THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON
COUNTY, Plaintiff-Appellee,
v.
Ray CROCKER and wife, Susan Crocker, as Legal Guardians and
Next Friends of Michael Crocker, a minor;
Tennessee Secondary School Athletic
Association, Defendants-Appellants;
and Charles Smith, Commissioner of the Tennessee Department
of Education, Defendant-Appellee
 Nos. 89-6450, 89-6451.
 United States Court of Appeals, Sixth Circuit.
 July 25, 1990.
 
 Before MERRITT, Chief Judge; KEITH and Nathaniel R. JONES, Circuit Judges.
 
 
 1
 MERRITT, Chief Judge. The Tennessee Secondary School Athletic Association (TSSAA) and its Executive Director, Ronald Carter (Carter), appeal the November 2, 1989, order of District Judge John Nixon (1) enjoining the TSSAA from taking action against McGavock High School (McGavock) and its officials to prevent or discourage Michael Crocker (Crocker) from participating in interscholastic athletics, and (2) enjoining the TSSAA from imposing sanctions against Crocker or the Metropolitan Government of Nashville (Metro) for Metro's decision to allow Crocker to play interscholastic athletics at McGavock during the 1988-89 school year. Because Crocker graduated from McGavock in May 1990, the propriety of the District Court's injunction pertaining to Crocker's eligibility to play interscholastic athletics at McGavock is moot. Concerning the issue of sanctions, we hold that because District Judge Nixon had jurisdiction to issue the initial preliminary injunction in this case, Crocker, Metro, and McGavock should not be penalized for actions taken pursuant to that preliminary injunction. The fact that this injunction ultimately was dissolved by this Court because the Crockers had failed to exhaust their administrative remedies does not affect the District Court's jurisdiction to enter the injunction in the first instance.
 
 I. Facts and Procedural History
 
 2
 On October 18, 1989, Michael Crocker, a twelfth grade student at McGavock High School, filed a complaint in the District Court alleging that the TSSAA and its Executive Director, Ronald Carter, had violated his rights under the Education of the Handicapped Act (EHA), 20 U.S.C. Secs. 1400-1485 (1988), and Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794 (1988). Crocker's suit stemmed from actions taken by the TSSAA in an attempt to preclude Crocker from playing interscholastic athletics at McGavock. The events preceding the instant action are complex.
 
 
 3
 During Crocker's tenth grade year, he transferred from Ezell-Harding Christian School to McGavock High School. Pursuant to TSSAA Article II, Section 13 transfer regulations, Carter ruled that Crocker was ineligible to participate in interscholastic football, basketball, baseball, and track for a period of twelve months, dating from his enrollment at McGavock. Although appeals of this decision were made pursuant to the TSSAA's hardship waiver rules, these appeals were denied.
 
 
 4
 Subsequent to the initial appeal of the ineligibility determination, Crocker was certified by Metropolitan Public Schools as having a specific learning disability in written language. Accordingly, Crocker was certified as "handicapped" under the provisions of the EHA, 20 U.S.C. Sec. 1401(a).
 
 
 5
 In light of this certification, Crocker's parents filed an initial suit on their son's behalf against the TSSAA, Charles Smith, the Commissioner of the Tennessee Department of Education, and the Metro Board of Education, alleging that enforcement of the TSSAA's transfer rule against Crocker deprived him of his rights under the EHA. Crocker v. TSSAA, No. 3-88-0710 (M.D.Tenn. Nov. 3, 1988). The District Court ruled that although the EHA did not require local and state educational agencies to affirmatively provide extracurricular activities for handicapped students, the EHA did prohibit discrimination by these agencies against handicapped students. Thus, the District Court held that "a student who transferred from one school to another for the purpose of receiving a free appropriate public education under the EHA could not be prohibited from participating in extracurricular activities, and that such a prohibition would amount to discrimination based on handicap." Id. slip op. at 3. Pending a determination by the local educational agency as to the reason prompting Crocker's transfer of schools, the District Court declared "that no athletic contest that he [Crocker] participates in is to be determined by the TSSAA to be an invalid contest." See, Transcript, Crocker v. TSSAA, No. 3-88-0710 (M.D.Tenn. September 23, 1988), J.A. at 106. This decision was later vacated by this Court on December 13, 1988, because the Crockers had failed to exhaust the administrative procedures mandated by the EHA and state law. Crocker v. TSSAA, 873 F.2d 933 (6th Cir.1989). Prior to the dissolution of the District Court injunction against the TSSAA interference with Crocker's athletic participation, and during the pendency of that injunction, Crocker had played interscholastic athletics at McGavock.
 
 
 6
 The Crockers ultimately pursued their administrative remedies. At an administrative hearing, Administrative Judge James Mulroy found that Crocker's handicap had motivated his transfer from Ezell-Harding to McGavock. Thus, the TSSAA's refusal to grant a hardship waiver amounted to discrimination. Accordingly, Judge Mulroy ruled that Metro must allow Crocker to participate in interscholastic athletics without any threat of retaliation. Because the TSSAA and Carter were not parties to this action, however, Judge Mulroy's order was not enforceable against them.
 
 
 7
 In August 1989, Carter ruled Crocker to be ineligible for 1989 football because Crocker had played in 1988 under the District Court's injunction to the TSSAA ineligibility ruling. Crocker did not appeal this latest decision to the TSSAA Board of Control. Carter also ruled that McGavock must forfeit all 1988 games in which Crocker had played. The TSSAA Board of Control upheld this decision on appeal.
 
 
 8
 The foregoing events culminated in this current action by Crocker. On October 18, 1989, Crocker filed a complaint in District Court alleging that Carter and the TSSAA had violated his rights under the EHA and Sec. 504 of the Rehabilitation Act, 20 U.S.C. Sec. 794. Crocker sought an injunction, plus compensatory and punitive damages totalling $1.5 million.
 
 
 9
 On the same day, Metropolitan filed separately against the TSSAA and others seeking a declaratory judgment regarding the rights and obligations of the parties under the decision by Judge Mulroy in In re Crocker, No. 89-29, a due process hearing conducted under the EHA and the Tennessee Special Education Law, Tenn.Code Ann. Sec. 49-10-601 to -602 (1983). Metro also sought injunctive relief (1) to keep TSSAA the from retaliating against McGavock High School or Metro because Crocker was allowed to play interscholastic sports under Judge Mulroy's decision, and (2) to keep the TSSAA from forcing McGavock to forfeit those games, and awards earned therefrom, in which Crocker played.
 
 
 10
 On October 19, 1989, the District Court issued a temporary restraining order against the TSSAA and Carter in both of the foregoing actions. Crocker and Metro's application for a preliminary injunction were heard together on October 23, 1989. In this hearing, the District Court took judicial notice of the proceedings in Crocker v. TSSAA, No. 3-88-0710 (M.D.Tenn. Nov. 3, 1988), in which District Judge Nixon enjoined the TSSAA from declaring Crocker ineligible to play at McGavock because Crocker was "handicapped" within the meaning of the EHA; because his transfer from Ezell Harding to McGavock was because of his handicap; and, therefore, because the TSSAA's transfer rule (making Crocker ineligible to play interscholastic sports for 12 months after the transfer from Ezell Harding to McGavock) discriminated against him on the basis of his handicap.[1]
 
 
 11
 On November 2, 1989, the District Court issued an order in the two suits, providing:
 
 
 12
 [T]his Court ORDERS defendant TSSAA not to take any action which might prevent, prohibit, or discourage McGavock High School ... from allowing Michael Crocker full participation in all interscholastic athletics. This Court further ORDERS defendant TSSAA not to impose any sanctions against Metro or Michael Crocker for Metro's decision to allow Michael Crocker to participate in interscholastic athletics during the 1988-89 school year.
 
 
 13
 Crocker v. TSSAA, Nos. 3-89-0803 & 3-89-0804 (M.D.Tenn. Nov. 2, 1989). It is from this decision that the TSSAA and Carter appeal.
 
 II. Analysis
 
 14
 A. Crocker's Participation in Interscholastic Athletics
 
 
 15
 The District Court's injunction, insofar as it enjoins the TSSAA from taking any action which interferes with Crocker's participation in interscholastic athletics, is a moot issue. Because of his graduation from McGavock High School in May 1990, Crocker is no longer eligible to play interscholastic athletics, regardless of the District Court's injunction. DeFunis v. Odegaard, 416 U.S. 312 (1974) (per curiam) (graduation from law school moots case and issue does not evade review).
 
 
 16
 B. Sanctions Against Metro, McGavock, and Crocker
 
 
 17
 The TSSAA and Carter also challenge the District Court's order insofar as it precludes the TSSAA from imposing sanctions against Metro, McGavock, or Crocker for Crocker's participation in interscholastic athletics during the 1988-89 school year. Particularly, the TSSAA wants McGavock to forfeit all games won and awards earned for games in which Crocker participated pursuant to the District Court's injunction that was later vacated by our Court. The TSSAA also challenges the November 2, 1989, order of the District Court because it allegedly enforces Judge Mulroy's administrative decision against the TSSAA and Carter despite the fact that the TSSAA and Carter were not parties to the administrative proceedings.
 
 
 18
 Clearly, Judge Mulroy's decision was not binding on the TSSAA or Carter because they were not parties to the administrative proceeding. See, e.g., Columbia Broadcasting Sys. v. United States, 316 U.S. 407 (1942); Chase Nat'l Bank v. City of Norwalk, 291 U.S. 431, 437 (1934). We do not read Judge Nixon's order, however, as a mere enforcement of Judge Mulroy's decision. Rather, the District Court's order arose out of a separate proceeding, to which the TSSAA and Carter were made parties, and which decision was consistent with the prior decision by the District Court in this case.
 
 
 19
 The TSSAA and Carter also object to the merits of the District Court's injunction insofar as it enjoins them from sanctioning McGavock High School--namely by requiring the forfeiture of games won, as well as any awards earned for games, in which Crocker participated as an ineligible athlete at McGavock during the 1988-89 school year. Apparently, the defendants assert that the District Court erred in enjoining TSSAA's forfeiture of contests by relying on the previous order of September 1988--an order that subsequently was reversed by this Court in Crocker v. TSSAA, 873 F.2d 933 (6th Cir.1989). As of the time that the TSSAA imposed sanctions on McGavock, the prior District Court injunction had been dissolved. Thus, the defendants assert that any injunction which interferes with their imposition of sanctions for McGavock's actions in allowing Crocker to play interscholastic athletics when the TSSAA had ruled him ineligible is unenforceable. We disagree.
 
 
 20
 McGavock High School allowed Crocker to play interscholastic athletics in reliance on District Judge Nixon's initial injunction in this case--in fact, McGavock was obligated to effectuate the District Court's order which prohibited interference with Crocker's ability to play interscholastic athletics. Although this Court later vacated that injunction because Crocker had not exhausted his administrative remedies under the EHA, District Judge Nixon still had jurisdiction to enter the injunction in the first place. The All-Writs Act, 28 U.S.C. Sec. 1651 (1988), gives the District Court authority to issue writs in aid of jurisdiction and to prevent defiance of its orders.
 
 
 21
 It would be unfair to penalize McGavock High School for actions that it took in compliance with a District Court order during the pendency of that order.
 
 
 22
 Accordingly, we AFFIRM the decision of the District Court, except that its injunctive order with respect to Michael Crocker's future participation in interscholastic athletics is vacated as moot.
 
 
 
 [1]
 As previously noted, our Court reversed and vacated this injunction in Crocker v. TSSAA, 873 F.2d 933 (6th Cir.1989)