[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15351
_____

D.C. Docket No. 9:12-cv-81120-DTKH


ADT LLC,

                                                    Plaintiff-Appellee,

versus

NORTHSTAR ALARM SERVICES, LLC,

                                          Interested Party-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 14, 2017)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and DUFFEY,[*] District
Judge.

WILLIAM PRYOR, Circuit Judge:

---

[*] Honorable William S. Duffey, Jr., United States District Judge for the Northern District of
Georgia, sitting by designation.

This appeal presents the question whether a nonparty, not in privity with a party to an injunction, may be bound by that injunction as a successor in interest under the theory of de facto merger. After ADT LLC, sued Vision Security, LLC, for violations of the Lanham Act, 15 U.S.C. § 1125(a), the parties agreed to an injunction that prohibited Vision Security from using certain sales tactics. NorthStar Alarm Services, LLC, then acquired customer accounts, rental leases, and other assets from Vision Security and hired four senior officers and some of the sales team of Vision Security. When NorthStar allegedly used sales tactics prohibited by the injunction, ADT moved the district court to hold NorthStar in contempt of the injunction. The district court determined that, although NorthStar and Vision Security were not in privity, NorthStar was bound by the injunction as a successor to Vision Security under a state-law theory of de facto merger. We disagree. NorthStar cannot be bound by the injunction when it is not in privity with Vision Security and in the absence of any evidence that it had notice of the injunction, Fed. R. Civ. P. 65(d)(2). We vacate the order that held that NorthStar is bound by the injunction.

## I. BACKGROUND

In 2012, ADT filed a complaint against Vision Security that alleged violations of the Lanham Act, 15 U.S.C. § 1125(a). ADT alleged that Vision Security made false statements to customers of ADT to trick them into signing

2

contracts with a different security alarm company. The parties settled the lawsuit by agreeing to an injunction, which prohibited Vision Security from making false statements about ADT and from training "any person who may sell for or solicit customer[s] on behalf of Vision[] to violate the terms of th[e] Permanent Injunction."

In January 2015, Vision Security executed an asset purchase agreement with NorthStar. Although ADT argues that the agreement effected a corporate merger, NorthStar insists that the agreement involved only the purchase of some customer accounts from Vision Security. Under the agreement, NorthStar acquired from Vision Security 8,000 customer accounts to add to the 35,000 accounts NorthStar had before the agreement, goodwill, deferred revenues relating to the customer accounts, all the furniture, fixtures and equipment used in connection with the business that relate to the customer accounts, and obligations under some contracts, including real estate leases in Arizona and Utah. The agreement also specified that NorthStar did not acquire from Vision Security cash, bank accounts, customer accounts, contracts, and other accounts and assets not listed in the agreement, intellectual property, books of account and books of original entry, personnel records, any insurance policies or associated causes of action, all claims for tax refunds, all rights of Vision Security, and the equipment of the sole remaining

3

employee of Vision Security, Danielle Paletz. The agreement never mentioned the injunction in favor of ADT.

The agreement provided that NorthStar would hire four senior officers from Vision Security. One officer, Robert Harris, was the owner and chief executive officer of Vision Security and became the president of NorthStar. He also became a member of the board of directors of NorthStar and received almost fourteen percent of its stock. In his new position at NorthStar, Harris oversaw seven or eight regional sales managers, four of whom came to NorthStar from Vision Security. He testified that "[t]he leadership of the sales organization report directly to [him.]" But he also testified that his "primary role at NorthStar is involved in recruiting people to come work for NorthStar" and that he did not "personally do any sales training at NorthStar." NorthStar also hired between thirty and thirty-five of the 250 sales representatives of Vision Security. But there was high turnover in the sales staff of Vision Security from year to year because most of the sales agents were seasonal independent contractors.

Vision Security terminated its sales force after it executed the agreement, consistent with a clause that prohibited Vision Security and Harris from competing with NorthStar for five years. But Paletz remained employed by Vision Security to service between 1,500 and 2,000 accounts that Vision Security retained. Another company provided monitoring services for those accounts.

4

About one year after the entry of the injunction against Vision Security, ADT determined that NorthStar was violating the terms of the injunction. It moved the district court for an order to show cause why NorthStar and Harris should not be held in contempt of the injunction. ADT argued that that the injunction against Vision Security bound NorthStar because NorthStar had purchased part of the alarm business of Vision Security.

After a hearing, a magistrate judge recommended that NorthStar and Harris be bound by the injunction. The magistrate judge determined that NorthStar and Vision Security were not in privity, but that NorthStar was bound by the injunction as a successor to Vision Security under a state-law theory of de facto merger. The magistrate judge also determined that Harris was bound "because in his capacity as CEO and sole managing member of Vision [Security], his liability is the same as if he had been a named party in the underlying lawsuit." The district court adopted the recommendation of the magistrate judge, and only NorthStar appealed.

## II. STANDARDS OF REVIEW

We review an order that grants, continues, or modifies an injunction for abuse of discretion. *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc). "We review the underlying findings of fact for clear error and conclusions of law *de novo*." *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1349 (11th Cir. 2009).  Whether a party is in privity with another party is a question of fact that we

5

review for clear error. *See E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004).

## III. DISCUSSION

Federal Rule of Civil Procedure 65 governs who may be bound by a federal injunction:

> (2) *Persons Bound.* The order binds only the following *who receive actual notice* of it by personal service or otherwise:
>> (A) the parties;
>>
>> (B) the parties' officers, agents, servants, employees, and attorneys; and
>>
>> (C) *other persons who are in active concert or participation* with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d)(2) (second and third emphases added). The rule "does not really add or detract from the range of persons that were bound by a decree under basic equity practice and due-process principles applied on the equity side of the federal courts prior to 1938." 11A Charles Alan Wright, Arthur R. Miller, *et al.*, Federal Practice and Procedure § 2956 (3d ed.), 11A Fed. Prac. & Proc. § 2956, Westlaw (database updated Jan. 2017) (citation omitted). That is, Rule 65(d) "embod[ies] rather than . . . limit[s]" the common law powers of the district court. *United States v. Hall*, 472 F.2d 261, 267 (5th Cir. 1972) (Wisdom, J.). At common law, an injunction bound "not only . . . the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945).

"Broadly speaking, both [Rule 65] and the common-law doctrine contemplate two categories of nonparties potentially bound by an injunction." *Nat'l Spiritual Assembly of Bahá'ís of the U.S. under the Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of the Bahá'ís of the U.S.*, 628 F.3d 837, 848 (7th Cir. 2010) (Sykes, J.). The first category is comprised of parties who aid and abet the party bound by the injunction in carrying out prohibited acts. *See F.T.C. v. Leshin*, 618 F.3d 1221, 1236 (11th Cir. 2010). The second category, "captured under the general rubric of 'privity,'" includes "nonparty successors in interest" and nonparties "otherwise 'legally identified' with the enjoined party." *Nat'l Spiritual Assembly*, 628 F.3d at 848–49 (citation omitted); *see also* Wright & Miller, *supra*, at § 2956. This appeal concerns the second category.

We divide our discussion in two parts. We first explain that NorthStar and Vision are not in privity. We then explain that NorthStar may not be bound by the injunction under the theory of de facto merger because NorthStar lacked notice of the injunction.

### A.  NorthStar and Vision Security Are Not in Privity.

"'[P]rivity' denotes a legal conclusion rather than a judgmental process." *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977) (Wisdom, J.). It "represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close" to bind the

7

nonparty to the injunction. *Id.* (citation omitted). But "[t]he concept of privity . . . is ultimately bounded by due process." *Nat'l Spiritual Assembly*, 628 F.3d at 849. An injunction may not extend to "persons who act independently and whose rights have not been adjudged according to law." *Chase Nat'l Bank v. City of Norwalk*, 291 U.S. 431, 437 (1934) (citations omitted); *see also* Wright & Miller, *supra*, § 2956 (explaining that a court may not bind a party that is not "so identified in interest with those named in the decree that it would be reasonable to conclude that their rights and interests have been represented and adjudicated in the original injunction proceeding" (citations omitted)). A similar requirement governs when res judicata may bind a nonparty to a prior judgment. *See Pemco Aeroplex*, 383 F.3d at 1286 (explaining that the rule that "a party cannot be bound by a judgment in a prior suit in which it was neither a party nor in privity with a party" is "part of our deep-rooted historic tradition that everyone should have his own day in court" (internal quotation marks and citations omitted)).

The district court determined that NorthStar and Vision Security are not in privity because there was "insufficient evidence to conclude that NorthStar's interests are so intertwined with Vision's that NorthStar should be bound by the injunction." The district court found that NorthStar "was a much larger alarm company" that "existed for fourteen years before acquiring some of Vision's assets" and that "NorthStar's sales tactics were clearly established prior to, and

8

independent of, NorthStar's relationship with Vision." The district court explained the lack of any evidence that NorthStar had a relationship with Vision before the agreement or that NorthStar and Vision Security controlled each other. And, "[m]ost importantly," the district court found that "NorthStar did not have any involvement in the underlying litigation, and its interests were not represented when the injunction was negotiated."

ADT argues that NorthStar and Vision Security are in privity based on the decision in *Golden State Bottling Co., Inc. v. N.L.R.B.*, 414 U.S. 168 (1973). ADT contends that *Golden State* stands for the proposition that privity "is shown where the successor buys the predecessor's business, in circumstances where the successor may fairly be charged with knowledge of the injunction at the time of the purchase." But the facts of this appeal are distinguishable from *Golden State*.

*Golden State* held that "a bona fide purchaser, acquiring, with knowledge that the wrong remains unremedied, [an] employing enterprise which was the locus of [an] unfair labor practice, may be considered in privity with its predecessor for purposes of Rule 65(d)." 414 U.S. at 180 (citations omitted). All American Beverages, Inc. purchased the soft drink bottling and distribution business of Golden State after the National Labor Relations Board ordered Golden State to reinstate an employee with back pay. *Id.* at 170. Later, the Board "found that All American continued after the acquisition to carry on the business [of Golden State]

9

without interruption or substantial changes in method of operation, employee complement, or supervisory personnel." *Id.* at 171. The Board also found that All American purchased Golden State with knowledge of the unfair labor practice that was the subject of the order entered against Golden State. *Id.* at 173. The trial examiner discredited the testimony of the manager and the president of Golden State that they did not inform All American of the litigation before the completion of the sale and "inferred from the unexplained failure of All American to produce its negotiators as witnesses that their testimony would not have supported All American's disclaimer of knowledge." *Id.* at 174 (citations omitted). The Supreme Court affirmed the determination that All American knew about the unfair labor practice and held that All American could be considered "in privity" with Golden State under Rule 65(d). *Id.* at 173, 180. The Court also explained that its decision did not "contravene[ ] the policy underlying Rule 65(d)[ ] of not having 'order(s) or injunction(s) so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law'" because "[t]he tie between the offending employer and the bona fide purchaser of the business, supplied by a . . . finding of a continuing business enterprise, establishe[d] the requisite relationship of dependence." *Id.* at 180 (quoting *Regal Knitwear*, 324 U.S. at 13).

10

In contrast with *Golden State*, the record before us contains no evidence that NorthStar knew about the injunction before it acquired assets from or hired employees of Vision Security. *Golden State* explained that a successor "may" be considered in privity with a predecessor where it acquires an entity that is the subject of the injunction "with *knowledge* that the wrong remains unremedied." *Id.* (emphasis added); *see also Brunswick Corp. v. Chrysler Corp.*, 408 F.2d 335, 337 (7th Cir. 1969) (binding the successor of a business to an injunction that bound its predecessor where it purchased the predecessor with knowledge of the injunction). But the district court made no finding that NorthStar knew about the injunction when it entered the asset purchase agreement with Vision Security, and ADT offers no evidence that NorthStar knew about the injunction.

ADT argues that *Golden State* stands for the proposition that "the acquirer's knowledge may be inferred where the manager of the predecessor business continues as its manager and 'president' after the sale," but *Golden State* does not hold that knowledge *must* be inferred when the head of a company bound by an injunction takes a job with another company. In *Golden State*, the trier of fact drew an inference of knowledge after hearing testimony and reviewing the record. *Golden State*, 414 U.S. at 173. But the district court drew no such inference about NorthStar. The chief executive officer of NorthStar never testified that he knew about the injunction, and Harris never testified that he informed anyone else at

11

NorthStar about the injunction. And the asset purchase agreement did not disclose the injunction in its schedule of litigation. As a court of appellate review, we cannot say, based on this record, that NorthStar knew of any wrongdoing by Vision Security when they entered into their agreement.

### B.  NorthStar Cannot Be Bound as a Successor in Interest.

The district court determined that, although NorthStar and Vision Security were not in privity, NorthStar could be bound as a successor in interest to Vision Security under the theory of de facto merger. De facto merger is a state-law exception to the general rule that a "corporation that purchases or otherwise acquires the assets of a second corporation does not assume the debts and liabilities of the second corporation." *Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1456–57 (11th Cir. 1985). It applies "where a sale is really a merger [of] one corporation absorbing the other, the absorbed corporation going out of existence and losing its identity to the absorbing corporation that remains." *Atlas Tool Co., Inc. v. Commissioner*, 614 F.2d 860, 870 (3d Cir. 1980).

Even if Vision Security and NorthStar de facto merged, that NorthStar is a successor to Vision Security under state law does not mean that NorthStar is bound by a federal injunction issued against Vision Security. "[T]he question of the extent to which a federal injunction applies to non-parties is governed by Federal Rule of Civil Procedure 65(d), not by state law." *Additive Controls & Measurement Sys.,*

12

*Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1355 (Fed. Cir. 1998); *accord Hall*, 472 F.2d at 266–67. Rule 65 requires that a party have notice of an injunction before that party may be bound by the injunction. *See* Rule 65(d)(2) (stating that an injunction binds only enumerated parties "who receive actual notice" of the injunction "by personal service or otherwise"); *see also Brunswick Corp.*, 408 F.2d at 337 (binding a nonparty to a consent decree where the nonparty was in privity with a party to the consent decree and had knowledge of the consent decree); *Interstate Commerce Comm'n v. Rio Grande Growers Coop.*, 564 F.2d 848, 849 (9th Cir. 1977) (binding a nonparty to an injunction where the nonparty was a successor to a party to the injunction and the incorporator of the successor had knowledge of the injunction); *New York v. Operation Rescue Nat'l*, 80 F.3d 64, 70–71 (2d Cir. 1996) (binding a nonparty to an injunction where the nonparty was a successor of a party to the injunction and had notice of the injunction). An order may not be "so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." *Regal Knitwear*, 324 U.S. at 13.

The district court made no finding that NorthStar had knowledge of the injunction against Vision Security, as required by Rule 65(d). The district court found that the interests of NorthStar were not represented when the injunction was

13

negotiated, and it found that the sales practices at issue in this appeal developed "prior to, and independent of, NorthStar's relationship with Vision [Security]."

ADT counters that "successorship liability do[es] not distinguish between so-called 'independent' actions of the successor, as opposed to continued acts by agents or assets of the predecessor," but the caselaw cited by ADT addresses factors that apply in the context of employment discrimination. *Criswell v. Delta Air Lines, Inc.*, 868 F.2d 1093, 1094 (9th Cir. 1989). And even in that context, one factor that is "critical to the imposition of successor liability" requires "notice to the successor employer of its predecessor's legal obligation." *Id.* (quoting *Musikiwamba v. Essi, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985)).

In the absence of a finding that NorthStar knew about the injunction against Vision Security, the district court erred when it ruled that NorthStar was bound by the injunction under a theory of de facto merger. A court cannot bind a party whose "rights have not been adjudged according to law." *Regal Knitwear*, 324 U.S. at 13. The record does not support a ruling that NorthStar is bound by the injunction.

## IV. CONCLUSION

We **VACATE** the order that NorthStar is bound by the injunction.

14