[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10949

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DIANA ROBINSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cr-00057-PGB-LHP-3

_____

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

ROSENBAUM, Circuit Judge:

A court's injunction may require a person to do or refrain from doing a particular act. 1 Howard C. Joyce, *A Treatise on the Law Relating to Injunctions* § 1, at 2–3 (1909). But unlike a congressionally enacted statute, which can apply to everyone, an injunction generally applies to only those over whom the court has jurisdiction in the proceedings leading to the injunction, and only to the extent that the injunction gives notice to them. This case raises the question of just how far an injunction of a private corporation can reach.

In 2017, TASER International, Inc., obtained an injunction against "Phazzer [Electronics] and its officers, agents, servants, employees, and attorneys; and any other persons who are in active concert or participation with Phazzer Electronics or its officers, agents, servants, employees, or attorneys" (the "2017 injunction"). The injunction prohibited Phazzer Electronics from distributing or causing to be distributed certain stun guns and accompanying cartridges that infringed on TASER's intellectual property. At the time of the TASER-Phazzer Electronics litigation, Steven Abboud controlled Phazzer Electronics (though not on paper). And Phazzer Electronics employed, among others, Defendant-Appellant Diana Robinson.

In 2018, after the district court found Abboud in contempt for violating the 2017 injunction, Phazzer Electronics became inactive, and Abboud persuaded Uriel Binyamin to start a new company called Phazzer-USA. In the meantime, Abboud and Robinson

went to work for other entities with "Phazzer" in their names. Among others, these included Phazzer IP and Phazzer Global. Phazzer IP and Phazzer Global, in turn, assisted Phazzer-USA in 2019 in distributing stun guns that the 2017 injunction prohibited Phazzer Electronics from distributing.

Based on that activity the district court found Robinson (and others) in contempt of the 2017 injunction. On appeal, the question we must answer is whether the 2017 injunction extended broadly enough to bind Robinson and prohibit her conduct under the theories of liability that the government has pressed and the district court decided. After oral argument and careful review of the record, we conclude that the record cannot sustain Robinson's conviction under the any of these theories.

To be sure, the government did not seek a contempt conviction under and the district court did not consider one last theory of liability in a criminal-contempt case—whether Robinson aided and abetted a person or entity in privity with an enjoined party in violating the injunction—a theory that the government may believe possibly applies here. But now it's too late. So we vacate Robinson's conviction.

## I.    BACKGROUND

### A. Factual Background

As we've mentioned, the district court in this case found Robinson in contempt of an injunction it issued July 17, 2017, against "Phazzer [Electronics] and its officers, agents, servants,

employees, and attorneys; and any other persons who are in active concert or participation with Phazzer [Electronics] or its officers, agents, servants, employees, or attorneys." Doc. No. 183, at 11–12. Before we get to that point in the story, though, we must explain how the 2017 injunction came about.

### 1. Phazzer Electronics, Inc.

Kirk French and Steven Abboud were cousins-in-law. Sometime around 2006 or 2007, Abboud approached French about forming a company to sell conducted electrical weapons, also known as stun guns. According to French, Abboud asked French to form the company, Phazzer Electronics, Inc. ("Phazzer Electronics"), because Abboud was going through a divorce and wanted to conceal the company from his wife. French thought he'd also benefit from the company because he hoped to become an active participant in the company's operations when he retired from the military.

So in 2008 or 2009, French formed Phazzer Electronics. Relevant to this appeal, Phazzer Electronics sold a stun gun called the Enforcer.

Though French and his wife were the named owners of the company, Abboud ran the day-to-day operations of the business.[1] For example, Abboud had the business relationships with companies located in Taiwan that manufactured the products Phazzer

---

[1] For nearly all Phazzer Electronics's existence, French did not receive compensation from the company, though Phazzer Electronics did pay his cellphone bill.

Electronics sold.  He also obtained Phazzer Electronics's inventory, and he made the bulk of the decisions for the company.  In fact, Abboud's role was so tied up with Phazzer Electronics's business that he went by the nickname "The General" within the company. Abboud resigned from the company sometime in 2017 but provided consulting services to Phazzer Electronics until 2018.

Phazzer Electronics also employed Diana Robinson.  Robinson answered the phones, shipped inventory, and responded to technical questions.  She took her directions from Abboud, who always acted as the owner of Phazzer Electronics.

By the end of 2018, Phazzer Electronics ceased operating.

### 2.  The TASER Civil Injunction

In March 2016, TASER International ("TASER"), a stun gun manufacturer, brought suit against Phazzer Electronics for trademark and patent infringement, false advertising, and unfair competition.  On July 21, 2017, the district court entered judgment in favor of TASER and awarded several remedies, including a permanent injunction precluding Phazzer Electronics from producing and selling certain products such as the Enforcer stun gun.  The injunction provided,

> Phazzer [Electronics] and its officers, agents, servants, employees, and attorneys; and any other persons who are in active concert or participation with Phazzer Electronics or its officers, agents, servants, employees, or attorneys, are hereby enjoined from:
>
> > a. Making or causing to be made,

b. Using or causing to be used,

c. Offering for sale, or causing to be offered for sale,

d. Selling or causing to be sold,

e. Donating or causing to be donated

f. [D]istributing or causing to be distributed,

g. Importing or causing to be imported,

h. Exporting or causing to be exported

the Phazzer Enforcer CEW, and any other conducted electrical weapon ("CEW") or device which infringed upon claim 13 of the '262 Patent, and any device not colorably different from the Enforcer CEW.  The effect of this injunction shall continue through October 14, 2019.[2]

Doc. No. 183, at 11–12.

The Federal Circuit affirmed the district court's judgment and injunction.

3.  2018 Civil Contempt Finding Against Phazzer Electronics and Abboud

Before the Federal Circuit issued its opinion (and less than a year after the district court enjoined Phazzer Electronics, its

---

[2] The district court also entered the same injunction for Phazzer Electronics's stun-gun cartridges.

officers, employees, and agents), the district court found Phazzer Electronics and Abboud to be in civil contempt of the 2017 injunction. In particular, TASER presented evidence that Phazzer Electronics sold and shipped the enjoined Enforcer stun gun to TASER's investigator and that Abboud continued to conduct demonstrations of the enjoined products. Although the district court declined to impose additional penalties, it notified Phazzer Electronics and Abboud that any continued violations of the court's injunction would result in the initiation of criminal-contempt proceedings. The Federal Circuit summarily affirmed. *TASER Int'l, Inc. v. Phazzer Elecs., Inc.*, 773 F. App'x 1092 (Fed. Cir. 2019).

### 4.  Formation of Phazzer-USA

Four months after these events, Abboud approached Uri Binyamin about forming a company to sell Phazzer products.[3] According to Binyamin, in the process of forming the company, Abboud gave him a choice of four names for the company. Binyamin chose the name Phazzer-USA LLC, and the company was formed on September 21, 2018. The company was registered to Robinson, who used an email address of controller@phazzerglobal.com.

Four days after Phazzer-USA was formed, an entity called Phazzer IP LLC appeared on the scene. While it's unclear from the record generated during this litigation when Phazzer IP was

---

[3] Abboud and Binyamin previously met around 2013 or 2014 when Binyamin was filling a request for proposal for the Israeli police.

formed, the context of the evidence in the record suggests that Phazzer IP formally held at least some of the intellectual property supporting the Phazzer Electronics devices and that Phazzer IP and Phazzer Electronics had entered into a Trademark License Agreement so that Phazzer Electronics could sell the devices. In any case, on September 25, 2018, Robinson, writing as a member of Phazzer IP, notified French that Phazzer IP was terminating its Trademark License Agreement with Phazzer Electronics. This spelled the end of Phazzer Electronics. It also cleared the way for Phazzer IP to work with Phazzer-USA. Binyamin testified that Robinson was his contact at Phazzer IP.

Yet another Phazzer entity—Phazzer Florida—also existed. Either Abboud or Robinson, acting on behalf of Phazzer Florida, gave Binyamin a username and password so that Phazzer-USA could order products from a manufacturer in Taiwan named Double Dragon. Robinson also facilitated payments between Phazzer-USA and Double Dragon.

Binyamin testified that Robinson sent him several emails about purchases Phazzer-USA made from Double Dragon. Essentially, it appears that Robinson acted as a facilitator for Phazzer-USA's purchases from Double Dragon. For instance, on February 25, 2019, Robinson, writing on behalf of Phazzer IP, listed the items in the order Binyamin placed with Double Dragon. That order included two products the injunction prohibited Phazzer Electronics from causing to be manufactured or sold. And nine days later, Robinson emailed Binyamin asking him to review the Double Dragon

invoices attached to the email. The invoices listed several products the injunction prohibited Phazzer Electronics from causing to be manufactured or sold. On another occasion, Robinson, writing on behalf of an entity called Phazzer Global LLC (where Abboud was employed), asked Binyamin for an inventory of all products he had in stock. Binyamin responded with a list of products that the injunction covered.

When it came to paying Double Dragon, Double Dragon never collected payment from Binyamin for products he ordered on behalf of Phazzer-USA. Rather, Robinson or Abboud would call Binyamin to ensure that the invoices he received were correct, and they would deal with Double Dragon.

5. TASER learns that Phazzer-USA is selling enjoined products.

It wasn't that long before TASER learned of Phazzer-USA's sales to the public. In March 2019, Richard Beary received an unsolicited email from Phazzer-USA asking about his interest in purchasing a "law enforcement kit." Unbeknownst to Phazzer-USA, it targeted the wrong person.

As it turns out, Beary was a retired law-enforcement officer working as a consultant for a company contracting with Axon Enterprise, Inc.,[4] formerly known as TASER. When Beary received the solicitation, he visited Phazzer-USA's website. Although the website didn't contain specific details about the models of stun gun

---

[4] To avoid confusion and for convenience, we refer to Axon as TASER throughout this opinion.

and cartridges included in the kit, Beary purchased the kit, anyway. The kit contained enjoined Phazzer products. Based on this incident, TASER moved for an order to show cause why Phazzer Electronics, Abboud, and Robinson should not be held in criminal contempt of the 2017 injunction.

## B.  *Procedural Background*

In response to TASER's motion, the district court issued a notice of criminal-contempt proceedings and a show-cause order for Phazzer Electronics, Abboud, and Robinson to respond to charges that they willfully violated the 2017 injunction when Phazzer-USA sold the enjoined products in 2019. The notice stated that the court would conduct a bench trial, so if Abboud or Robinson were found guilty, their maximum penalty would not exceed six months' imprisonment.

After trial, but before the district court made any factual findings, Robinson moved for a judgment of acquittal. She argued that she could not be guilty of contempt because she was a third party not bound by the injunction. As Robinson saw things, once Phazzer Electronics ceased operations following Phazzer IP's termination of the IP license, Robinson was no longer an employee of Phazzer Electronics. And because she did not work in concert with Phazzer Electronics, Robinson reasoned, she couldn't otherwise be bound by the injunction. Alternatively, Robinson argued that, even if bound by the injunction, she did not willfully violate it.

The court denied Robinson's motion and found Phazzer Electronics, Abboud, and Robinson guilty of criminal contempt. First, the district court determined that the injunction was lawful and reasonably specific.  Second, the court found that Phazzer Electronics, Abboud, and Robinson violated the injunction because, at all times, Abboud was the de facto owner of Phazzer Electronics, and Robinson was an employee and agent of the company.  And after the 2017 injunction was entered, Abboud recruited Binyamin to "form a new entity to pick up where Phazzer Electronics left off."  Doc. No. 107, at 16.  Indeed, the district court explained, Robinson, acting on behalf of Phazzer IP, terminated Phazzer Electronics's license agreement "on the exact same day that Phazzer-USA [] received an [employer identification number]."  The district court also found that Abboud and Robinson supervised the distribution of Phazzer products by Phazzer-USA.  Ultimately, the district court concluded that Phazzer Electronics, Abboud, and Robinson violated the injunction by causing Phazzer-USA to offer for sale, sell, and distribute enjoined products.

The district court also addressed Robinson's argument that she was not bound by the injunction.  In the court's view, Robinson's argument "miss[ed] the point" because "Mr. Abboud and Ms. Robinson were without a doubt Phazzer Electronics' agent" when they "caused Phazzer-USA to offer for sale, sell, and distribute products covered by the injunction."  *Id*. at 17.   And, the court explained, "[i]t is not a defense . . . that Ms. Robinson and Mr. Abboud used other legal entities (Phazzer Global and Phazzer IP) to facilitate their actions.[]"  *Id*. at 17-18.  To accept Abboud's and

Robinson's argument, the district court reasoned, "would . . . encourage entities and individuals subject to an injunction to sidestep it by enlisting a family member or unwitting party to form an LLC." *Id*. at 18 n.13.

Third, the district court found that Phazzer Electronics, Abboud and Robinson willfully engaged in "a pattern of activity that violated the injunction" by selling the enjoined products and consciously taking steps to circumvent the injunction. So the district court found Phazzer Electronics, Abboud, and Robinson guilty of criminal contempt and set a separate date for sentencing.

In preparation for sentencing, the probation office prepared Robinson's presentence investigation report ("PSI"), which noted that Robinson was subject to six months in prison or five years of probation and a maximum fine of $5,000. The PSI asserted that Robinson's contempt offense was a class B misdemeanor and that the Sentencing Guidelines did not apply. It also said that, under 18 U.S.C. § 3583(b)(3), the court could impose a one-year term of supervised release following imprisonment.

Robinson objected to the possibility of post-imprisonment supervision. She argued that her offense was a "petty offense," exempt from a term of supervised release. The district court overruled Robinson's objection, and it sentenced Robinson to three weeks in prison followed by one year of supervised release.

Robinson now appeals the district court's denial of her motion for judgment of acquittal and her sentence of supervised release.

## II.    DISCUSSION

### A.  Standards of Review

As always, we begin with the applicable standards of review. We review de novo the denial of a motion for acquittal. *United States v. Evans*, 473 F.3d 1115, 1118 (11th Cir. 2006). As for the district court's judgment that an injunction binds a party, we review that for clear error. *See ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1351 (11th Cir. 2017); *see also United States v. Uscinski*, 369 F.3d 1243, 1246 (11th Cir. 2004) (reviewing factual findings in the criminal context for clear error).

We also review de novo the sufficiency of the evidence. *United States v. Taylor*, 480 F.3d 1025, 1026 (11th Cir. 2007). In conducting that review, we consider whether the evidence, construed in the light most favorable to the government, would ultimately permit the trier of fact to find the defendant guilty beyond a reasonable doubt. *United States v. Maynard*, 933 F.2d 918, 920 (11th Cir. 1991). But we don't make factual findings in the first instance. *United States v. Noriega*, 676 F.3d 1252, 1263 (11th Cir. 2012); *United States v. Fulford*, 662 F.3d 1174, 1181 (11th Cir. 2011). Finally, we review, to the extent any such question is raised, the district court's credibility choices for clear error only. *See United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005).

## B. *The district court's factual findings are insufficient to allow for the conclusion that Robinson was bound by the 2017 injunction.*

As we've noted, the district court concluded that Robinson caused Phazzer-USA to offer for sale, sell, and distribute the enjoined products, and that when she did so, she always acted as an employee or agent of Phazzer Electronics.

A court can "punish by fine or imprisonment, or both, at its discretion, . . . contempt of its authority," including a defendant's "disobedience or resistance" to its lawful order. 18 U.S.C. § 401(3). A valid conviction for criminal contempt requires proof of all the following: (1) the court entered a lawful order of reasonable specificity; (2) the defendant violated that order; and (3) the defendant did so willfully. *Maynard*, 933 F.2d at 920.

The only element Robinson presses on appeal is the second one—whether Robinson violated the district court's 2017 injunction. But before we can decide that, we must first determine whether the 2017 injunction bound Robinson.

Federal Rule of Civil Procedure 65 reflects the courts' traditional understanding of whom a federal injunction binds. As a starting point, an injunction binds a person who "receive[s] actual notice of it" if that person falls into any of the three categories that Rule 65(d) delineates:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

FED. R. CIV. P. 65(d)(2).

But though we generally stick to the limitations of the text, our precedent is clear that Rule 65(d) "embodies, rather than limits the common law powers of the district court." *ADT*, 853 F.3d at 1351 (cleaned up). So besides those categories Rule 65(d) identifies, we have read the rule to continue to permit application of "the commonlaw doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *United States v. Hall*, 472 F.2d 261, 267 (5th Cir. 1972) (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945) (quotation marks omitted)).[5] As our predecessor Court explained, Rule 65(d) "cannot be read to restrict the inherent power of a court to protect its ability to render a binding judgment." *Id.*

Still, due-process considerations limit the circumstances in which a court can find someone in contempt who is not a party to the injunction. *See ADT*, 853 F.3d at 1352. After all, a person must

---

[5] We recognize decisions of the former Fifth Circuit issued before October 1, 1981, as binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

first know that she is bound by an injunction before she can be required to comply with it.

To determine the scope of the 2017 injunction, we begin with its text. The 2017 injunction applied to "Phazzer [Electronics] and its officers, agents, servants, employees, and attorneys; and any other persons who are in active concert or participation with Phazzer or its officers, agents, servants, employees, or attorneys." Doc. No. 183, at 11–14. This language largely tracks Rule 65(d). So by its own terms, the district court's injunction binds these categories of people and entities: (1) Phazzer Electronics, which was a party in the TASER civil case; (2) Phazzer Electronics's officers, agents, servants, employees and attorneys; and (3) those in active concert with Phazzer Electronics, its officers, agents, servants, employees or attorneys—that is, those who were neither party to the litigation nor the agents of a party, but who aid and abet those who are bound by the injunction.

Our caselaw also recognizes that the injunction binds (4) those under the "general rubric of privity," a category that includes "nonparty successors in interest" and "nonparties otherwise legally identifiable with the enjoined party." *ADT*, 853 F.3d at 1352. And some of our sister Circuits have concluded that (5) those who aid and abet those in privity with an enjoined party are also bound. As we explain later, we agree that those who aid and abet those in privity with an enjoined party are bound by an injunction.

One observation about the five categories: the first two bind parties, and the last three cover nonparties.

So Robinson can be bound by the injunction only if she falls into one of these five categories.

### 1.    Robinson was not a party to the 2017 injunction.

For starters, Robinson is not Phazzer Electronics.  And she was not named as a defendant in the litigation that resulted in the 2017 injunction.  So much for subsection (A) of Rule 65(d).

### 2.    Robinson was not an employee or officer of Phazzer Electronics when Phazzer-USA distributed items that the 2017 injunction enjoined.

So we move on to subsection (B).  As a general matter, a court may not enjoin a non-party that has not appeared before it to have its rights legally adjudicated.  *See Chase Nat'l Bank v. City of Norwalk,* 291 U.S. 431, 436–37 (1934).

But as the text of subsection (B) reflects, there's always an exception.  And as relevant here, the Supreme Court has explained that (consistent with subsection (B) of Rule 65(d)) officers or employees of a company are bound by an injunction, even if they did not appear before the court, because "[a] command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs."  *Wilson v. United States*, 221 U.S. 361, 376 (1911); *see also United States v. Fleischman*, 339 U.S. 349, 357–58 (1950) ("A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they . . . prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience and

may be punished for contempt." (internal quotation marks omitted)).  The 2017 injunction, following Rule 65(d), specifically covered employees of Phazzer Electronics.

So we consider whether Robinson was an officer, agent, or employee of Phazzer Electronics.  The answer to that inquiry is yes, for some period.  But when that period was is everything here.

To be sure, the record reflects that Robinson performed mostly administrative work when Phazzer Electronics employed her, before it ceased operating in September 2018.  So as an employee of Phazzer Electronics at that time, she was bound by the 2017 injunction.  The district court also concluded that Robinson was an agent of Phazzer Electronics.

That reasoning goes only so far, though.  The problem is that Robinson was no longer a Phazzer Electronics employee or agent in 2019 when she caused Phazzer-USA to sell the enjoined products.  And since she wasn't a Phazzer Electronics employee or agent at that time, she could no longer be bound by the injunction as an employee or agent under the second Rule 65(d) category.  In fact, Phazzer Electronics was not even operating at that time.  *See, e.g., Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 848 (7th Cir. 2010) ("Although the individual defendants might have qualified as 'officers' or 'agents' of the [organization] in June of 1966 when the injunction was entered, after the organization was dissolved in December of that year, they obviously no longer

held that status."). So that eliminates the second Rule 65(d) category.

### 3. Under the district court's order, Robinson was not bound by the 2017 injunction as a nonparty.

Before considering the remaining categories in earnest, we pause to discuss Robinson's obligations under the district court's injunction as a *former* employee of Phazzer Electronics. We have not yet answered this question expressly. But Rule 65(d) contains no category pertaining specifically to "former employees." Rather, it speaks of "employees."

Because the rule does not define the term "employees," we consider "the common usage of [the] word[] for [its] meaning." *CBS Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217, 1222 (11th Cir. 2001). And more specifically, we consider the word's meaning at the time Rule 65(d) was adopted, in 1937. *See Wis. Cent. Ltd. v. United States,* 138 S. Ct. 2067, 2070 (2018). Around that time, dictionary definitions for the term "employee" included, for example, "[o]ne employed by another; one who works for wages or salary in the service of an employer," *Employee,* WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1938), and "[a] term of rather broad signification for one who is employed," *Employee,* BOUVIER'S LAW DICTIONARY (1934).

These definitions both employ the present, not past tense. *Webster's* speaks specifically of only one who "works." And *Bouvier's* refers to one who "is" employed. So the ordinary usage of

the term "employee" generally denotes someone who is currently employed.

As for the common law, it does not allow for injunctions to capture former employees merely because they are former employees, either.  In other words, under Rule 65(d) and the common law, a former employee can be bound exactly to the extent that a non-former employee, nonparty can be bound.  And we are aware of no circuit that has found any special liability for an enjoined party's former employees that would transcend the outer bounds of the established categories.

Some of our sister circuits have effectively applied this rule. In sum, they have considered a former employee bound by an injunction if she falls into either the third or fourth categories of those whom an injunction may bind—that is, if she is a person or entity who aids or abets a named defendant or its agent, or a person or entity who is legally identified with the enjoined party. *See, e.g.*, *Alemite Man'g. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930).

Besides these four categories, at least two of our sister circuits have recognized a fifth category of nonparties (whether former employees or not) that an injunction may bind:  a nonparty who aids or abets a nonparty in privity with an enjoined party can be bound by an injunction. *See People of State of New York by Vacco v. Operation Rescue National*, 80 F.3d 64, 70 (2d Cir. 1996); *see also Additive Controls & Measurement System, Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1350 (Fed. Cir. 1998).  As Wright & Miller explains,

22-10949                 Opinion of the Court                       21

> [P]ersons who are not actual parties to the action or in privity with any parties may not be brought within the effect of a decree merely by naming them in the order. **The only significant exception to this rule involves nonparties who have actual notice of an injunction and are guilty of aiding or abetting or acting in concert with a named defendant or the defendant's privy in violating the injunction. They may be held in contempt.**

11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2956 (3d ed. 2023 Update) (emphasis added). But no one has gone further than that.

That is so because, as the Second Circuit noted before the adoption of Rule 65(d), "no court can make a decree which will bind any one but a party," so a court of equity "cannot lawfully enjoin the world at large, no matter how broadly it words its decree." *Alemite*, 42 F.2d at 832. After all, courts are "not vested with sovereign power to declare conduct unlawful." *Id.* Rather, their "jurisdiction is limited to those over whom [they] get[] personal service, and who therefore can have their day in court." *Id.* at 832–33. So a non-party may be punished in conjunction with contempt of an injunction only when the person "has helped to bring about . . . an act of a party," meaning the person "must either abet the defendant, or must be legally identified with him." *Id.* at 833; *see also Additive Controls*, 154 F.3d at 1350; *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 39–40 (1st Cir. 1980); *Nat'l Spiritual Assembly*, 628 F.3d at 849.

Though we don't appear to have previously addressed a contempt case involving a former employee, our precedent recognizes many of these same principles. Indeed, we've said that "both Rule 65 and the common-law doctrine contemplate two categories of nonparties potentially bound by an injunction[:] The first category is comprised of parties who aid and abet the party bound by the injunction in carrying out prohibited acts[,] [and] [t]he second category, captured under the general rubric of 'privity,' includes nonparty successors in interest and nonparties otherwise legally identified with the enjoined party." *ADT*, 853 F.3d at 1352 (cleaned up).

As for the fifth category (the third category of nonparties)—a nonparty who aids or abets a nonparty in privity with an enjoined party—for reasons we explain later in this opinion, we join our sister circuits in recognizing that an injunction can bind such nonparties.

But even as we acknowledge that the 2017 injunction can bind these categories of nonparties, we must still review the district court's factual findings to determine whether Robinson falls within any of the categories. And if she does not, she cannot be bound by the injunction. As we've explained, her status as a former employee of Phazzer Electronics alone does not mean that the injunction applies to her. *See* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2956 (3d ed. 2023) ("[A] person who ceases to act [as a corporation's officer or agent] is no longer is bound by the decree, assuming the individual does not act in concert with the named enjoined party.").

With the understanding that injunctions apply to an enjoined party's former employees the same way they apply to all nonparties, we consider the three nonparty categories whom the 2017 injunction would bind.

    *i.*    <u>*Robinson did not aid and abet a named enjoined party.*</u>

We start with the category of those who aid and abet the enjoined party.  As the Supreme Court has explained, "defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."  *Regal*, 324 U.S. at 14.  Rule 65(d)'s "active concert or participation" language recognizes that parties who aren't specifically named in an injunction's text may nonetheless thwart the objectives of that injunction.  *Nat'l Spiritual Assembly*, 628 F.3d at 887.

But Robinson cannot fall into the aiding-and-abetting category because, as we've noted, Phazzer Electronics—the enjoined party—no longer existed at the times of Robinson's acts.  As French testified, after the district court found Abboud in contempt in 2018, Phazzer Electronics stopped operating and became inactive.  The company "shut everything down" and it no longer sold any products.  Doc. No. 95, at 32.  And when Robinson engaged in the distribution of enjoined Phazzer products, the year was 2019, well after Phazzer Electronics had stopped operating.  So though Robinson was aware of the injunction when she acted with Phazzer-USA to distribute Phazzer enjoined products, that is not enough under an aiding-and-abetting theory here.  In short, Phazzer Electronics wasn't around for Robinson to aid and abet.  *See Additive Controls*,

154 F.3d at 1353 ("Non-parties are subject to contempt sanctions if they act with an enjoined party to bring about a result forbidden by the injunction, but only if they are aware of the injunction and know that their acts violate the injunction. (citations omitted)).

Nor does the record show that Robinson aided and abetted any other party to the injunction. The district court did find that Robinson and Abboud worked together in 2019 to supervise the distribution of Phazzer products through Phazzer-USA. But when they did this, Abboud was no longer an employee of Phazzer Electronics. Rather, Abboud resigned from Phazzer Electronics in August 2017 and then worked with the company as a consultant. And by September 2018, he was no longer paid by Phazzer Electronics. Because Abboud was no longer an employee, officer, or agent of Phazzer Electronics, we cannot consider him a named party to the injunction. *See Nat'l Spiritual Assembly*, 628 F.3d at 848. Ultimately, then, an aiding-and-abetting theory alone cannot support Robinson's contempt conviction.

ii.    *The record does not allow us to conclude that Robinson was in privity with a named party.*

That brings us to whether the record shows that Robinson satisfied the fourth category—that is, whether, generally speaking, she herself was in privity with Phazzer Electronics or another bound party. *See ADT*, 853 F.3d at 1352. In the context of the scope of injunctions, "privity is seen as a descriptive term for designating those with a sufficiently close identity of interests" to justify enforcement of an injunction against a nonparty. *Nat'l Spiritual*

*Assembly*, 628 F.3d at 849. Privity involves a close relationship between the party on record and the non-party. *ADT*, 853 F.3d at 1352. But the constitutional due-process requirement limits the privity exception. *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996). So again, "courts [ ] my not grant an . . . injunction so broad as to make punishable the conduct of persons who acted independently and whose rights have not been adjudged according to law." *Regal*, 324 U.S. at 13. As we've noted, privity captures two subcategories: (1) "nonparty successors in interest" and (2) "nonparties otherwise legally identified with the enjoined party." *ADT*, 853 F.3d at 1352 (quotation marks and citation omitted).

We start with nonparty successors in interest. Successors in interest can be bound by an injunction, even though they weren't parties to it because "[a]n injunction would be of little value if its proscriptions could be evaded by the expedient of forming another entity to carry on the enjoined activity." *Additive Controls*, 154 F.3d at 1354; *see also Regal*, 324 U.S. at 14. But successor liability depends on the successor's knowledge of the injunction at the time of the purchase or transfer. *ADT*, 853 F.3d at 1353 (concluding that the record developed at the district court contains no evidence that the purchaser knew about the injunction before it acquired assets from or hired employees of the enjoined company).

In the context of a labor injunction, for instance, the Supreme Court has held that a *bona fide* purchaser who acquired an enjoined company with knowledge of a National Labor Relations Board ("NLRB") order and who was a "continuing business

enterprise" was in privity with the enjoined company. *Golden State Bottling Co., Inc. v. NLRB*, 414 U.S. 168, 179–80 (1973). As a result, the purchaser, too, was bound by the injunction. Key to this holding was the fact that the purchasing company had notice of the NLRB's order and received a hearing with the assistance of counsel on whether the purchasing company was bound company's successor. *Id.* at 181.

Here, though, the record contains no evidence to suggest that Robinson was a *bona fide* purchaser of Phazzer Electronics.

Then again, *bona fide* purchasers aren't the only ones who can be successors in interest of an enjoined party. *See Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 674 (1944) (injunction may be enforced "against those to whom the business may have been transferred, whether as a means of evading the judgment or for other reasons"). As the Second Circuit has explained, "an organization and its agents may not circumvent a valid court order merely by making superficial changes in the organization's name or form, and in appropriate circumstances a court is authorized to enforce its order against a successor of the enjoined organization." *Vacco*, 80 F.3d at 70. To determine whether a successor falls into this category, we look to "whether there is a substantial continuity of identity" between the enjoined party and the successor. *Id.*

Still, though, we have found no cases where a court has applied the successor-in-interest theory to an individual instead of a business or an organization. When we are talking about an individual, we think the question becomes whether that person can be

legally identified with an enjoined party. The Seventh Circuit has commented on the meaning of "legal identity" in the former-employee context. It has said the term "usually means successors and assigns, but it can include a limited class of other nonparties as well—*provided* the evidence establishes a very close identity of interest and such significant control over the organization *and* the underlying litigation that it is fair to say that the nonparty had his day in court when the injunction was issued." *Nat'l Spiritual Assembly*, 628 F.3d at 853.

In determining whether a nonparty satisfies this threshold, courts have considered "the officer's position and responsibilities in the enjoined corporation, his participation in the litigation that preceded the entry of the injunction, and the degree of similarity between his activities in the old and new businesses." *Additive Controls*, 154 F.3d at 1352; *see also G. & C. Merriam Co.*, 639 F.2d at 37–38. Essentially, we view this category "as an instance of piercing corporate veils." *G. & C. Merriam Co.*, 639 F.2d at 39; *see also Nat'l Spiritual Assembly*, 628 F.3d at 854.

To show what that means in practical terms, we turn to the First Circuit's discussion in *G. & C. Merriam Co.* of the "legal identity" concept. The First Circuit has explained that it's not enough for a former employee to have been a "key employee" of the enjoined company and to have known of the injunction. 639 F.2d at 37. Rather, the employee must have had "such a key role in the corporation's participation in the injunction proceedings that it can be fairly said that he has had his day in court in relation to the

validity of the injunction." *Id.* Not only that, but to find such a former employee in contempt, the record must prove each of these facts. *See id.*

These important qualities keep the scope of contempt liability "within the limits of due process." *Nat'l Spiritual Assembly*, 628 F.3d at 852. Indeed, as the Seventh Circuit has recognized, "due process requires an extremely close identification [between the enjoined party and the nonparty legally identified with it]." *Id.* at 854. So it is "satisfied only when the nonparty 'key employee' against whom contempt sanctions are sought had substantial discretion, control, and influence over the enjoined organization—both in general and with respect to its participation in the underlying litigation—and there is a high degree of similarity between the activities of the old organization and the new." *Id.*

The record here does not clear these hurdles. The district court did not make factual findings about whether Robinson was a key employee. Nor did it determine whether she so controlled Phazzer Electronics and the litigation that resulted in the 2017 injunction that it would be fair to say she had her day in court on that injunction. Because the record lacks findings and relevant evidence on these important questions, we cannot conclude that Robinson was bound by the 2017 injunction on this basis.

iii.    *The district court did not consider whether Robinson aided and abetted a person or an entity in privity with Phazzer Electronics.*

Finally, we reach the category that includes those aiding and abetting an entity or person in privity with a party bound by the injunction.  Once again, Rule 65(d) does not expressly address this possibility.  But as we've noted, Rule 65(d) "cannot be read to restrict the inherent power of a court to protect its ability to render a binding judgment."  *Hall*, 472 F.2d at 267.  And just as "an organization and its agents may not circumvent a valid court order merely by making superficial changes in the organization's name or form," nor may a person knowingly aid and abet such an organization acting in violation of the injunction.  *See Vacco*, 80 F.3d at 70; *see also Additive Controls*, 154 F.3d at 1353.  Or as the district court put it when discussing another category of liability, "[a]n injunction is not a game of whack-a-mole where the Court must repeatedly issue new injunctions to address the Defendants' post-injunction craftiness."

Here, the government did not pursue the theory that Robinson aided and abetted someone in privity with a party bound by the 2017 injunction, and the district court did not consider it.  Of course, it's really not a wonder why:  we have not previously expressly discussed this category of those bound by an injunction.

Still, though, as we've noted, other circuits and treatises had recognized the theory before the district-court proceedings here.  So had the government believed it had the goods, the government

certainly had a good-faith basis to advocate for the district court to find Robinson in contempt of the 2017 injunction because she allegedly aided and abetted someone or some entity in privity with a bound party. But it did not do that.

And that fact has consequences here. In other contexts, the Supreme Court has rejected the notion that an appellate court should affirm a conviction on a theory that the government did not advocate and the factfinder did not consider in the district court. For instance, just recently in the fraud context, the Supreme Court refused the government's efforts to defend an honest-services-fraud conviction by (1) relying on a theory that "differ[ed] substantially" from the jury instructions and (2) relying on a second theory that the jury was not instructed on. *Percoco v. United States*, 598 U.S. 319, 331–32 (2023). And though the Supreme Court remanded the case for further proceedings consistent with its opinion, *see id.* at 333, the Second Circuit then vacated the defendant's conviction on that count, *United States v. Percoco*, ___ F.4th ___, 2023 WL 5688662, \*2 (2d Cir. Sept. 5, 2023).

The Supreme Court has reached similar conclusions in other fraud cases. In *Ciminelli v. United States*, 598 U.S. 306, 316–17 (2023), for example, the Court disapprovingly said, "With profuse citations to the records below, the Government asks us to cherry-pick facts presented to a jury charged on the right-to-control theory and apply them to the elements of a *different* wire fraud theory in the first instance." The Court continued, "In other words, the Government asks us to assume not only the function of a court of first view, but

also of a jury. That is not our role." *Id*. at 317. Similarly, in *Chiarella v. United States*, 445 U.S. 222, 236 (1980), the Court cautioned that it could not "affirm a criminal conviction on the basis of a theory not presented to the jury," so it refused to "speculate upon whether [the alleged] duty [the government raised for the first time on appeal] exists, whether it has been breached, or whether such a breach constitutes a violation of § 10(b)" (citations omitted). Instead, the Court simply reversed the defendant's conviction on the spot and did not remand for further proceedings. *Id*. at 237.

And the Court has also rejected the government's attempts to substitute a new theory of liability in the extortion context. *See McCormick v. United States*, 500 U.S. 257, 270–71, n.8 (1991) ("Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury.").

To be sure, these Supreme Court cases involved jury trials, and that factored into the Court's holdings. *See*, *e.g.*, *McCormick*, 500 U.S. at 270–71 n.8 ("[I]n a criminal case a defendant is constitutionally entitled to have the issue of criminal liability determined by a jury in the first instance."). But we think due-process considerations of notice also support these conclusions. After all, a defendant who knows she faces a different theory of prosecution may choose to present different evidence, argument, or both, in her defense.

In our view, this principle applies equally in the criminal-contempt context and equally when a judge, rather than a jury, is the

factfinder. Defending against a claim of contempt when the government alleges the defendant is an employee of an enjoined company certainly implicates different evidence and arguments than defending against a claim of contempt when the government pursues the theory that the defendant aided and abetted someone or some entity in privity with a bound party. In the first instance, a defendant need only show that the enjoined company did not employ her at the time that alleged violations of the injunction occurred. Unlike in the second scenario, she has no reason to present evidence or argument about whether the person or entity alleged to be in privity with the enjoined company was, in fact, in privity with that company. Nor does she have any reason to show or argue that she did not aid or abet that person or entity that is allegedly in privity with the enjoined party.

So we do not consider whether Robinson aided and abetted a party or entity in privity with Phazzer Electronics. Instead, we vacate Robinson's conviction for insufficiency of the evidence under the first four categories of persons and entities that the 2017 injunction enjoined. Of course, if new alleged violations of the 2017 injunction occur, nothing prevents the government from prosecuting them under the aiding-and-abetting-someone-in-privity-with-a-bound-party theory in the future.

## III.    CONCLUSION

For the reasons we've explained, we vacate Robinson's criminal-contempt conviction. Because we vacate her conviction, we

do not address Robinson's argument about the propriety of her su-pervised-release sentence.

**VACATED**.