[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11111

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

STEVEN ABBOUD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cr-00057-PGB-LHP-2

_____

Before WILSON, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Steven Abboud appeals his conviction for criminal contempt and his sentence of supervised release. After a bench trial, the district court found Abboud guilty of willfully violating an injunction issued by the court. Abboud maintains he was entitled to a judgment of acquittal because he was not bound by the injunction and because the evidence did not support a finding of guilt beyond a reasonable doubt. He also contends that supervised release was not authorized because his contempt violation qualifies as a petty offense under 18 U.S.C. § 3583(b)(3). After careful review, we conclude that Abboud was bound by the injunction and that sufficient evidence supports his conviction. We also hold that Abboud invited any error with regard to his supervised release.

## I.

Briefly stated, the relevant history is as follows.[1] From 2009 through 2017, Abboud ran the day-to-day operations of Phazzer Electronics, a company that sold conducted electrical weapons, also known as stun guns. Abboud's cousin was the named owner of the company but did not actively participate in its operations. Phazzer Electronics also employed Diana Robinson, who took directions from Abboud.

---

[1] A more complete factual background is presented in the related case of *United States v. Robinson*, 83 F.4th 868, 874 (11th Cir. 2023).

In 2016, TASER International[2], a stun gun manufacturer, sued Phazzer Electronics for trademark and patent infringement, among other claims.  In July 2017, the district court entered judgment for TASER and awarded several remedies, including a permanent injunction that barred Phazzer Electronics from producing and selling certain stun guns and stun-gun cartridges.  After the injunction was entered, Abboud resigned from the company as an employee, but he continued to be involved as a consultant.

The injunction applied to "Phazzer [Electronics] and its officers, agents, servants, employees, and attorneys; and any other persons who are in active concert or participation with Phazzer or its officers, agents, servants, employees, or attorneys."  It prohibited not only manufacturing, selling, and distributing enjoined products, but also "causing" enjoined products to be manufactured, sold, or distributed.  The Federal Circuit ultimately affirmed the district court's judgment and injunction.

In May 2018, the district court found Phazzer Electronics and Abboud to be in civil contempt of the 2017 injunction.  TASER presented evidence that Phazzer Electronics sold and shipped an enjoined stun gun to TASER's investigator and that Abboud continued to conduct demonstrations of enjoined products.  The court declined to impose monetary sanctions, but it notified Phazzer Electronics and Abboud that any continued violations of the court's injunction would result in criminal-contempt proceedings.

---

[2] TASER is now Axon Enterprise, Inc.

After the civil contempt finding, Abboud enlisted an acquaintance, Uriel Binyamin, to form a new company, called Phazzer-USA, LLC, to sell Phazzer products. Robinson helped set up the company's operations, including connecting Binyamin with a manufacturer in Taiwan named Double Dragon, a company associated with Phazzer Global, Inc., for which Abboud served as president. Around the same time, Robinson emailed Phazzer Electronics to revoke its license to sell Phazzer products. Phazzer Electronics shut down soon after as a result. Robinson also facilitated Phazzer-USA's purchases from Double Dragon, which included enjoined products. Robinson was Abboud's secretary or administrator across various Phazzer entities.

In March 2019, a retired law-enforcement officer working as a consultant for TASER received an unsolicited email from Phazzer-USA asking about his interest in purchasing a "law enforcement kit." The consultant placed an order for the kit, which contained enjoined Phazzer products. Based on this incident, TASER moved for an order to show cause why Phazzer Electronics, Abboud, and Robinson should not be held in criminal contempt of the 2017 injunction.

The district court issued a notice of criminal contempt proceedings and a show-cause order for Phazzer Electronics, Abboud, and Robinson to respond to charges that they willfully violated the 2017 injunction by "continu[ing] to sell infringing products." The notice stated that the court would conduct a bench trial, so if

Abboud or Robinson were found guilty, their maximum penalty would not exceed six months' imprisonment.

After trial, Abboud moved for a judgment of acquittal. He argued that he was not bound by the injunction against Phazzer Electronics, which ceased operations in 2018, and that, even if bound, he did not violate the injunction or do so willfully.

The district court denied Abboud's motion and found him guilty of criminal contempt. First, the court found that the injunction was lawful and reasonably specific. Next, the court found that Abboud—the "de facto owner" of Phazzer Electronics—violated the injunction. The court explained that, after the 2017 injunction was entered, Abboud recruited Binyamin "to form a new entity to pick up where Phazzer Electronics left off," and then "supervised the distribution of Phazzer products via Phazzer-USA," the new entity. In the court's view, this conduct amounted to causing Phazzer-USA to offer for sale, sell, and distribute enjoined products, in violation of the injunction. Finally, the court found that Abboud willfully engaged in "a pattern of activity that violated the injunction" by selling the enjoined products and consciously taking steps to circumvent the injunction. So the court found Abboud guilty of criminal contempt and set a separate date for sentencing.

Before sentencing, the probation office prepared Abboud's presentence investigation report ("PSR"), which noted that Abboud was subject to a maximum of six months in prison or five years of probation and a maximum fine of $5,000. It also said that, under 18 U.S.C. § 3583(b)(3), the court could impose a one-year

term of supervised release.  Abboud filed a sentencing memorandum, requesting a sentence of "no more than 30 days incarceration followed by a term of supervised release."

At sentencing, defense counsel reiterated Abboud's request for no more than 30 days of imprisonment and "one year of supervised release."  Ultimately, the district court sentenced Abboud to five months' imprisonment, followed by one year of supervised release.  Abboud did not object to the sentence.  He now appeals the denial of his motion for judgment of acquittal, as well as his sentence of supervised release.

## II.

We review de novo the denial of a motion for judgment of acquittal and the sufficiency of the evidence to support a criminal conviction.  *United States v. Taylor*, 480 F.3d 1025, 1026 (11th Cir. 2007); *United States v. Evans*, 473 F.3d 1115, 1118 (11th Cir. 2006).  Sufficient evidence supports a conviction when the evidence, construed in the light most favorable to the government, permits a reasonable factfinder to find the defendant guilty beyond a reasonable doubt.  *United States v. Robinson*, 83 F.4th 868, 878 (11th Cir. 2023).  We review the district court's factual findings and credibility judgments for clear error.  *Id.*

## III.

A district court may fine or imprison those in contempt of its authority, including disobedience or resistance to its lawful order.  18 U.S.C. § 401(3).  To support a conviction for criminal contempt, "the government must prove: (1) that the court entered a

lawful order of reasonable specificity; (2) the order was violated; and (3) the violation was willful." *United States v. Maynard*, 933 F.2d 918, 920 (11th Cir. 1991) (quotation marks omitted).

Abboud challenges only the second and third requirements. Regarding the second requirement, he contends that he was not bound by the injunction and that, even if bound, he did not violate the injunction. He also disputes that any violation was willful. We take each argument in turn.

A.    *Abboud is bound by the injunction.*

By the time of the infringing conduct in 2019, Abboud "was no longer an employee, officer, or agent of Phazzer Electronics, [so] we cannot consider him a named party to the injunction." *Robinson*, 83 F.4th at 882. While an injunction against a company binds its current employees, even if they did not appear before the court, we held in *Robinson* that *former* employees are bound only if they fall into one of three nonparty categories, *Robinson*, 83 F.4th at 880–82: (1) those who aid or abet a bound party, *id.* at 881; (2) those in privity with a bound party, including successors in interest or nonparties otherwise identifiable with the enjoined party, *id.*; and (3) those who aid or abet a party in privity with a bound party, *id.*

Abboud falls into the second nonparty category. As we explained in *Robinson*, a nonparty individual can be bound by an injunction when "that person can be legally identified with an enjoined party." *Id.* at 884. To satisfy due process, there must be "extremely close identification between the enjoined party and the nonparty legally identified with it." *Id.* (cleaned up). In practical

terms, that means the evidence must "establish[] a very close identity of interest and such significant control over the organization and the underlying litigation that it is fair to say that the nonparty had his day in court when the injunction was issued." *Id.* (quotation marks omitted). In determining whether a nonparty satisfies this threshold, we consider "the officer's position and responsibilities in the enjoined corporation, his participation in the litigation that preceded the entry of the injunction, and the degree of similarity between his activities in the old and new businesses." *Id.* (quotation marks omitted).

In *Robinson*, we held that the record lacked evidence that Abboud's codefendant, Robinson, "so controlled Phazzer Electronics and the litigation that resulted in the 2017 injunction that it would be fair to say she had her day in court on that injunction." 83 F.4th at 884. So we concluded that she could not be bound as a party in privity with an enjoined party.

Here, in contrast, the record shows that Abboud had substantial discretion and control over Phazzer Electronics both in general and with respect to the injunction proceeding. *See Robinson*, 83 F.4th at 884. He was, in the district court's words, the "de facto" owner of that company, running day-to-day operations for several years. He also controlled Phazzer Electronics during the civil proceeding that led to the injunction, determining its litigation strategy and making decisions about who participated in hearings or depositions. Plus, as the district court found, Abboud effectively carried on the same business after leaving Phazzer Electronics,

recruiting a third party "to form a new entity to pick up where Phazzer Electronics left off." This evidence is sufficient to establish that Abboud had "a very close identity of interest and such significant control over [Phazzer Electronics] and the underlying litigation that it is fair to say that [he] had his day in court when the injunction was issued." *Id.*

Accordingly, we conclude that Abboud remained bound by the 2017 injunction as a nonparty in privity with an enjoined party.

B.    *Sufficient evidence shows that Abboud violated the injunction.*

Next, sufficient evidence shows that Abboud violated the injunction by causing enjoined products to be sold or distributed. In the light most favorable to the government, the record shows that, after the 2017 injunction and 2018 civil contempt finding, Abboud sought a new company through which to sell Phazzer products. To that end, he recruited and assisted an acquaintance, Binyamin, to form the company Phazzer-USA; he and Robinson connected Binyamin with Double Dragon, the manufacturer and distributor of Phazzer products; and he arranged for and supervised the website Phazzer-USA used for customer orders.

The government also offered evidence that Robinson, who worked for Abboud, "acted as a facilitator for Phazzer-USA's purchases from Double Dragon," which included enjoined products. *Robinson*, 83 F.4th at 875. Emails from November 2018 through May 2019 between Robinson—on behalf of Phazzer Global and another Phazzer entity—and Binyamin, reflect orders from Double Dragon of multiple enjoined products. And enjoined products

made it to at least one consumer who purchased a "law enforcement kit" from Phazzer-USA's website in March 2019. This evidence, considered as a whole, supports a conclusion beyond a reasonable doubt that Abboud caused enjoined products to be sold or distributed in violation of the injunction.

C.    *Sufficient evidence shows that the violation was willful.*

Sufficient evidence also supports the district court's conclusion that Abboud acted willfully. "Willfulness is defined as a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order." *Maynard*, 933 F.2d at 920.

In arguing that any violation of the injunction was not willful, Abboud focuses on the March 2019 sale that triggered the criminal-contempt proceeding. He points to evidence that the enjoined product at issue was likely acquired by Binyamin before the injunction, and then mistakenly shipped by Binyamin to the consumer because of lax inventory practices. And he claims that Binyamin operated the business and fulfilled customer orders independently.

But the district court found that there was "evidence of a pattern of activity that violated the injunction, not an isolated sale." And the court reasonably attributed that pattern to a "scheme to circumvent the injunction," even if Binyamin was an "unwitting participant." Abboud recruited Binyamin to set up a new company, Phazzer-USA, not long after Abboud and Phazzer Electronics were found in civil contempt of the injunction, which evinces "conscious steps to avoid the injunction," as the court found. Abboud

and entities or persons under his control then connected Binyamin with Double Dragon, which supplied products covered by the injunction. And Binyamin's purchases from Double Dragon, including enjoined products, were overseen and facilitated by Robinson, who worked for Abboud. Viewed in the light most favorable to the government, the evidence supports the reasonable inference that Abboud caused Binyamin to create Phazzer-USA in a willful attempt to circumvent the injunction and to continue to distribute and sell products covered by the injunction.

For these reasons, we affirm Abboud's conviction for criminal contempt.

## IV.

Abboud also challenges the imposition of a term of supervised release, arguing that no supervised release could be imposed under 18 U.S.C. § 3583(b)(3) because he was convicted of a "petty offense."

But "[i]t is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (quotation marks omitted). "The doctrine of invited error is implicated when a party induces or invites the district court into making an error." *Id*. (quotation marks omitted). "Where invited error exists, it precludes a court from invoking the plain error rule and reversing." *Id*. (quotation marks omitted).

In *Love*, for example, a defendant convicted of criminal contempt challenged his five-year term of supervised release on appeal,

arguing that no supervised release was authorized or that the maximum term was one year. *Id.* at 1156–57. We declined to consider the merits of those arguments, reasoning that the defendant had "induced or invited the district court to impose a sentence that included a term of supervised release." *Id.* at 1157. The defendant did so by acknowledging that supervised release could be imposed, requesting a term of supervised release in lieu of additional jail time, and suggesting a term of two years' supervised release. *Id.*

Here, Abboud induced or invited the district court to impose a sentence that included supervised release. In his sentencing memorandum, he specifically asked the court for a sentence of no more than 30 days' imprisonment "followed by a term of supervised release." And at sentencing, he reiterated his request for a sentence with less than 30 days' imprisonment and "one year of supervised release." Thus, as in *Love*, he is precluded from claiming the court erred in sentencing him to a term of supervised release. *See id.* Accordingly, we affirm on this issue.

**AFFIRMED.**